EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Municipio de Arecibo<br><br>    Peticionario<br><br>        v.<br><br>Municipio de Quebradillas<br><br>    Recurrido | Certiorari<br><br>2004 TSPR 10<br><br>160 DPR ____ |

Número del Caso: CC-2002-816


Fecha: 22 de enero de 2004


Tribunal de Circuito de Apelaciones:
                Circuito Regional III


Juez Ponente:
                Hon. Jorge L. Escribano Medina


Abogado de la Parte Peticionaria:
                Lcdo. Lorenzo G. Llerandi Beauchamp


Abogados de la Parte Recurrida:
                Lcdo. Edgar Hernández Sánchez
                Lcdo. Germán R. Monroig-Pomales


Materia: Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de Arecibo

    Peticionario

        vs.                       CC-2002-816      Certiorari

Municipio de Quebradillas

    Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 22 de enero de 2004.

Nos toca decidir si el Tribunal de Primera Instancia tiene facultad para entender en una acción en cobro de dinero instada por un Municipio en contra de otro Municipio o si, por el contrario, dicha facultad le pertenece sólo a la "Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales" (en adelante, "Comisión").

I

El 31 de enero de 1995 el Municipio de Quebradillas (en adelante, Quebradillas) y el Municipio de Arecibo (en adelante, Arecibo) suscribieron un acuerdo titulado "Intermunicipal Agreement for Interim Disposal of Solid Waste

Between Municipality of Arecibo and Municipality of Quebradillas", mediante el cual Arecibo se comprometió a recibir los desperdicios sólidos generados por la población de Quebradillas a cambio de una suma de dinero que sería determinada durante cada año fiscal.

El 5 de febrero de 1997 Arecibo presentó en el Tribunal de Primera Instancia una demanda en cobro de dinero contra Quebradillas. Alegó que la parte recurrida le adeudaba $373,834.32 en virtud del referido contrato.[1] Quebradillas contestó la demanda, aceptando la existencia del contrato y negando prácticamente el resto de las alegaciones de Arecibo.

Luego de varios trámites en el pleito, y ante las reiteradas incomparecencias del Municipio de Quebradillas, el 1 de octubre de 2001 el tribunal de instancia procedió a eliminar las alegaciones de dicha parte y a anotarle la rebeldía. Posteriormente, el 17 de octubre de 2001, Quebradillas radicó una moción de desestimación por falta de jurisdicción sobre la materia. Fundamentó tal solicitud en que la parte peticionaria, Arecibo, tenía que agotar los remedios administrativos antes de presentar su acción judicial. Alegó, a su vez, que la "Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales", creada por la Ley Núm. 80 del 3 de junio

---

[1] En la súplica de la demanda, aparentemente por equivocación, se solicitó del tribunal que ordenara al Municipio de Camuy a satisfacer el pago de la referida deuda. El 3 de julio de 1998 la demanda fue enmendada para corregir este error requiriéndole entonces el pago de la deuda a Quebradillas.

de 1980, 3 L.P.R.A. 1751 (en adelante, Ley Núm. 80), era el foro facultado para atender en primera instancia el asunto en controversia. Por su parte, Arecibo presentó una moción en oposición a la desestimación. Alegó que la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. Sec. 4001 et seq., según enmendada, derogó tácitamente la Ley Núm. 80, al concederle a los municipios la facultad para cobrar sus deudas y, que por tal razón, el foro judicial tenía jurisdicción para entender en este tipo de controversias.

Luego de examinar los argumentos de las partes, el foro de instancia declaró no ha lugar la solicitud de desestimación. Inconforme con el referido dictamen y al amparo del mismo fundamento de la moción de desestimación que había presentado ante el tribunal de instancia, Quebradillas acudió al Tribunal de Circuito de Apelaciones. El 1 de octubre de 2002 dicho tribunal revocó el dictamen impugnado por entender que conforme la Ley Núm. 80 la referida "Comisión" tenía jurisdicción exclusiva en el caso.

El Municipio de Arecibo entonces acudió ante nos mediante un recurso de *certiorari* y alegó en esencia que había errado el Tribunal de Circuito de Apelaciones al determinar que la jurisdicción primaria y exclusiva para entender en el asunto que hoy nos ocupa correspondía al foro administrativo.

El 13 de diciembre de 2002 le dimos término a la parte recurrida para mostrar causa, si alguna tuviere, por la cual

no se debía revocar la sentencia del foro apelativo del 1 de octubre de 2002. Quebradillas compareció el 21 de enero de 2003. Con el beneficio de su comparecencia, pasamos a resolver según lo intimado.

II

A los fines de atender la controversia ante nos, es menester exponer sucintamente el propósito que tuvo el legislador al aprobar la Ley que creó la "Comisión".

Según se desprende de la exposición de motivos de la Ley Núm. 80, la mencionada "Comisión" fue creada con el propósito de lograr acuerdos expeditamente entre agencias gubernamentales en cuanto al monto que una agencia le debía a otra por servicios prestados, o en cuanto al modo en que debía pagarse la cantidad adeudada. Así pues, se creó esta "Comisión", integrada por tres miembros, a saber: el Secretario de Justicia, el Secretario de Hacienda y el Director de la Oficina de Gerencia y Presupuesto. De conformidad con la ley, el término "agencias gubernamentales" incluye, entre otros, a los municipios. 3 L.P.R.A. sec. 1751. El último párrafo del artículo 3 de la citada Ley Núm. 80 establece que los acuerdos procurados por dicha "Comisión" serán **finales y firmes** y que no serán apelables ante ningún organismo judicial o cuasijudicial. 3 L.P.R.A. sec. 1753.

Como podemos apreciar, la mencionada "Comisión" no es propiamente una agencia administrativa. Se trata, más bien,

de un comité del Ejecutivo encargado de investigar y resolver determinadas diferencias de criterio sobre cuentas intragubernamentales.

## III

En el caso de autos, el Tribunal de Circuito de Apelaciones resolvió específicamente que la Ley Núm. 80 "claramente indica" que la llamada "Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales" tiene jurisdicción primaria **exclusiva** para entender en controversias como la de autos. Esta conclusión del foro apelativo, sobre la cual basó su dictamen, no es correcta. Veamos por qué no lo es.

Ya antes hemos resuelto que los tribunales de Puerto Rico, por ser foros de jurisdicción general, tienen autoridad de ordinario para entender en cualquier reclamación que presente una controversia propia para adjudicación. Roberts v. U.S.O. Council of Puerto Rico, 145 D.P.R. 58 (1998); Junta Dir. Cond. Montebello v. Fernández, 136 D.P.R. 223 (1994); Ferretería Matos, Inc. v. P.R. Tel. Co., 110 D.P.R. 153 (1980); Rosado v. Registrador, 71 D.P.R. 553 (1950); Oronoz v. Román, 26 D.P.R. 25 (1917). Igualmente hemos señalado que para privar a un tribunal de su autoridad para conocer sobre algún asunto en particular, es necesario que algún estatuto **expresamente así lo disponga** o que **ello surja del mismo por implicación necesaria**. J. Directores v. Ramos, res. el 28 de agosto de 2002, 157 D.P.R. ___, 2002

TSPR 113, 2002 JTS 119; <u>Lagares v. E.L.A.</u>, 144 D.P.R. 601 (1997); <u>Junta Dir. Cond. Montebello v. Fernández</u>, *supra*; <u>Rosado v. Registrador</u>, *supra*.

Con este principio en mente, procede, pues, examinar la legislación pertinente para entonces determinar si en el caso de autos el tribunal de instancia tenía autoridad para intervenir en la acción en cuestión. Ello es particularmente necesario porque el caso de autos trata sobre una controversia que comúnmente sería dilucidada en el foro judicial. Debemos examinar, pues, si el legislador tuvo la intención de excluir de los tribunales un asunto que de ordinario sería de su jurisdicción y competencia.

IV

En primer lugar, debemos resaltar que en este caso ninguno de los estatutos pertinentes establecen expresamente la jurisdicción **exclusiva** de la referida "Comisión" para adjudicar reclamaciones como la que aquí nos ocupa. No lo indica la Ley que creó la Comisión. Tampoco lo indica la Ley de Municipios Autónomos.

Sabido es que la determinación de que un organismo administrativo tiene jurisdicción exclusiva sobre un asunto en particular trae la inevitable consecuencia de que el foro judicial esté impedido de intervenir en dicho asunto. En vista de lo que apareja la concesión de jurisdicción exclusiva, generalmente dicha facultad es expresamente concedida por ley o surge del estatuto en un lenguaje tan

claro que no da margen a dudas. Ese es el caso, por ejemplo, del estatuto que creó la Comisión de Investigación, Procesamiento y Apelación, CIPA, 1 L.P.R.A. sec. 172(2), en el que expresamente se dispone que:

"La Comisión . . . [a]ctuará como cuerpo apelativo con jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los funcionarios públicos . . ."

De igual modo, la jurisdicción exclusiva de la Junta de Relaciones del Trabajo ha sido expresamente establecida por la ley orgánica de dicha entidad.[2]

Sin lugar a dudas, la ausencia de una disposición expresa a esos fines, en el caso ante nos, tiende a demostrar que tal exclusividad no existe.[3] Toda vez que los estatutos en cuestión no establecen de manera expresa la alegada facultad exclusiva de la "Comisión" para entender en el asunto que hoy nos ocupa, procede entonces que éstos se analicen para ver si de algún otro modo establecen la jurisdicción exclusiva de dicha Comisión.

Examinemos, en primer lugar, la Ley que creó la "Comisión". El referido estatuto no contiene ninguna disposición que de algún modo aluda o incida sobre la cuestión de si el legislador tuvo la intención de otorgarle

---

[2] Véase, 29 L.P.R.A. sec. 68(a).

[3] En el derecho norteamericano, de donde hemos adoptado mayormente nuestro derecho administrativo, la norma es que la jurisdicción exclusiva de una agencia depende de que dicha facultad haya sido claramente concedida por estatuto. Véanse: Amalgamated Workers v. Edison Co., 309 U.S. 261 (1940); 2 Am. Juris. 2d Administrative Law, Sec. 524, pág. 512 (1994).

una jurisdicción exclusiva a la "Comisión" para entender en reclamaciones de cobro de dinero entre municipios. Un examen detenido del estatuto aludido, más bien, lleva a concluir que dicha Comisión es sólo un mecanismo que tienen a su disposición las agencias gubernamentales, incluyendo los municipios, para lograr expeditamente acuerdos sobre cuentas entre ellas. Así pues, en un caso como el de autos, un municipio puede **optar** por acudir a la "Comisión"; y si lo hace, se somete por claro mandato de ley a que el dictamen de la "Comisión" sea final y firme, inapelable. Dicho estatuto, sin embargo, nada provee que permita determinar que el tipo de reclamación aquí en cuestión no puede ser atendido en la alternativa por el foro judicial, o que toda reclamación de esta índole tiene que referirse necesariamente a la "Comisión". No hay nada, pues, en esta ley que permita concluir que las agencias gubernamentales, en este caso, los municipios, vienen **obligados** a dilucidar controversias como la de autos en la "Comisión" en lugar de acudir a los tribunales en un procedimiento de cobro de dinero.

La Ley de Municipios Autónomos, por su parte, sí tiene una disposición mediante la cual se faculta a los alcaldes a acudir a los tribunales en cobro de las deudas registradas a favor del municipio. Dicha disposición lee, en lo aquí pertinente, como sigue:

> Será obligación del Alcalde realizar todas las gestiones necesarias para el cobro de todas las deudas de personas naturales o jurídicas que estuviesen registradas en los libros o récords de

contabilidad a favor del municipio y recurrirá a todas las medidas que autoriza la ley para cobrar dichas deudas dentro del mismo año fiscal en que se registren o hasta la fecha del cobro. En los casos que sea necesario, **se deberá proceder por la vía judicial** y cuando el municipio no cuente con los fondos suficientes para contratar los servicios profesionales legales requeridos, referirá los casos al Secretario de Justicia. (Énfasis nuestro.) 21 L.P.R.A. sec. 4353.

Como vemos, este artículo abona claramente a la conclusión de que el tribunal de instancia no está impedido de atender una reclamación en cobro de dinero presentada por un municipio en contra de otro.

Cabe por último señalar, que la anterior conclusión es además, cónsona con nuestros pronunciamientos previos en los cuales hemos sido renuentes a aceptar la ausencia de jurisdicción de los tribunales, excepto en aquellos casos en los que el legislador claramente así lo ha dispuesto. Junta Dir. Cond. Montebello v. Fernández, *supra*; Ferretería Matos, Inc. v. P.R. Tel. Co., 110 D.P.R. 153 (1980); P.R. Amer. Ins. Co. v. P.R. Park. System, 108 D.P.R. 106 (1978); Rosado v. Registrador, *supra.* Como expresamos en Junta Dir. Cond. Montebello v. Fernández, *ante*, "[n]uestra renuencia a determinar ausencia de jurisdicción en estos casos es una concomitancia obligada de nuestra concepción de que, de ordinario, los tribunales de justicia están llamados a resolver los casos y controversias que se presentan ante ellos, concepción que tiene su origen en la disposición constitucional que establece el poder judicial."

En resumen, pues, la llamada "Comisión" es sólo un medio que tiene la Rama Ejecutiva para dilucidar

expeditamente ciertos tipos de controversias intragubernamentales, sobre todo de las agencias cuya dirección forma parte de una misma administración. Sin embargo, controversias como la de autos, que involucran particularmente disputas entre Municipios, pueden ser dilucidadas judicialmente porque no está dispuesto en ley que la facultad sobre ellas queda excluida de la autoridad judicial.

Nuestro dictamen está basado en claras y conocidas normas legales. Además, se apoya en una consideración importante de orden público. Nótese que si un municipio estuviese **obligado** siempre a dilucidar casos como el de autos ante una "Comisión" como la que aquí nos concierne, cuyas decisiones por claro mandato de ley son **inapelables**, existiría el claro riesgo de que los municipios cuyos alcaldes pertenezcan a un partido distinto al del Primer Ejecutivo no reciban un trato justo u objetivo de parte la llamada "Comisión". La entidad aludida es sólo un brazo del Primer Ejecutivo, que muy bien puede resolver disputas entre agencias gubernamentales que de cualquier forma están sujetas a las decisiones del Primer Ejecutivo. Pero cuando se trata de municipios, cuyos alcaldes son de partidos distintos al del Primer Ejecutivo, cosa que sucede con frecuencia en el país, siempre existe el riesgo que prevalezcan los intereses partidistas de éste, a costa de lo que le convenga al municipio reclamante. Los tribunales son, sin lugar a dudas, el foro más idóneo para que tal municipio

reclamante pueda dilucidar su reclamo con mayor garantía de objetividad.

Por todo lo anterior, resolvemos que el tribunal de instancia tenía jurisdicción para atender la acción presentada por la parte peticionaria. Erró, pues, el Tribunal de Circuito de Apelaciones al resolver de otro modo.

V

Por los fundamentos antes expuestos, procede que se dicte sentencia para revocar el dictamen emitido por el foro apelativo el 1 de octubre de 2002, y para devolver los autos al tribunal de instancia para que continúen los procedimientos conforme con lo aquí resuelto.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de Arecibo

    Peticionario

        vs.                CC-2002-816      Certiorari

Municipio de Quebradillas

    Recurrido


SENTENCIA


San Juan, Puerto Rico, a 22 de enero de 2004.


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca el dictamen emitido por el Tribunal de Circuito de Apelaciones, Región III Arecibo-Utuado, el 1 de octubre de 2002, y se devuelven los autos al Tribunal de Primera Instancia, Sala de Arecibo, para que continúen los procedimientos conforme con lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton emitió Opinión Disidente, a la cual se une el Juez Asociado señor Rebollo López. El Juez Asociado señor Rivera Pérez no intervino.


                        Patricia Otón Olivieri
                   Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de Arecibo

   Demandante-Peticionario

   v.                                CC-2002-0816     Certiorari

Municipio de Quebradillas

   Demandado-Recurrido


Opinión Disidente emitida por el Juez Asociado señor Hernández Denton, a la cual se unió el Juez Asociado señor Rebollo López

San Juan, Puerto Rico, a 22 de enero de 2004.

Disentimos de la Opinión del Tribunal por entender que la Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales,[4] creada por la Ley Núm. 80 de 3 de junio de 1980,[5] es una "agencia" según se define en la Ley de Procedimiento Administrativo Uniforme[6], que tiene jurisdicción primaria para atender la presente controversia entre los municipios de Arecibo y Quebradillas. Veamos.

---

[4] En adelante, Comisión para Resolver Controversias Interagenciales o la Comisión.

[5] 3 L.P.R.A. sec. 1751 *et seq*. (en adelante, Ley Núm. 80 de 1980).

[6] Ley Núm. 170 de agosto 12 de 1988, según enmendada, 3 L.P.R.A. sec. 2101 *et seq*. (en adelante, LPAU).

I

El Municipio de Arecibo (en adelante Arecibo) acordó disponer de los desperdicios sólidos generados por la población del Municipio de Quebradillas (en adelante Quebradillas) a cambio del pago de la tarifa correspondiente. A la luz del contrato que firmaron a esos efectos, Arecibo presentó una demanda de cobro de dinero contra Quebradillas ante el Tribunal de Primera Instancia. En su contestación a la demanda, Quebradillas negó la existencia de la deuda aunque aceptó que existía el referido contrato entre las partes.

Luego de varios trámites procesales, Quebradillas solicitó al tribunal de instancia la desestimación de la demanda. Alegó que Arecibo debió acudir en primer lugar a la Comisión para Resolver Controversias Interagenciales creada por la Ley Núm. 80 de 1980, *supra*. Por lo tanto, sostuvo que el tribunal carecía de jurisdicción sobre la materia. Arecibo se opuso a la desestimación bajo el argumento de que la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4001 *et seq.*,[7] al conceder autonomía administrativa a los municipios para disponer de sus ingresos y de la forma de recaudarlos e invertirlos, derogó implícitamente la Ley Núm. 80 de 1980, *supra*. El Tribunal de Primera Instancia denegó la solicitud de desestimación. Oportunamente, Quebradillas acudió al Tribunal de Apelaciones, el cual revocó al foro de instancia.

---

[7] Esta ley derogó la Ley Orgánica de los Municipios de Puerto Rico, 21 L.P.R.A. sec. 2001 *et seq*.

Inconforme con el dictamen del tribunal apelativo, Arecibo presentó ante nos una solicitud de *certiorari*.

La Opinión del Tribunal revoca al Tribunal de Apelaciones y resuelve que el Tribunal de Primera Instancia tiene jurisdicción para adjudicar el caso de autos. La Opinión concluye que la Comisión para Resolver Controversias Interagenciales, "es sólo un mecanismo que tienen a su disposición las agencias gubernamentales, incluyendo los municipios, para lograr expeditamente acuerdos entre ellas". Dicha posición ignora el claro mandato legislativo de que la Comisión tiene jurisdicción primaria para atender este tipo de controversia y que el Tribunal de Primera Instancia debió invocar dicha normativa y desestimar la acción presentada. Como el Tribunal de Apelaciones correctamente concluyó que procedía la desestimación de la acción presentada, confirmaríamos su dictamen.

## II

Como vemos, la controversia central en este caso trata sobre la  naturaleza de la jurisdicción de la Comisión para Resolver Controversias Interagenciales. No obstante, inicialmente hay que precisar cuál fue el efecto de la Ley de Municipios Autónomos, *supra*, sobre la Ley Núm. 80 de 1980, *supra*, que creó la Comisión para Resolver Controversias Interagenciales. Además, se debe determinar si la Comisión para Resolver Controversias Interagenciales es una "agencia" conforme a las disposiciones de la LPAU, *supra*. Por último, procede entonces evaluar la naturaleza de la jurisdicción de dicha Comisión.

Esta no es la primera vez que este Tribunal tiene ante su consideración las controversias que presenta el caso de epígrafe. En Autoridad de Desperdicios Sólidos v. Mun. de San Juan, res. el 19 de enero de 2000, 2000 TSPR 6, revocamos mediante Sentencia al Tribunal de Apelaciones por éste haber atendido un recurso de revisión judicial presentado fuera de los términos dispuestos en la LPAU, *supra*. En esa ocasión se solicitó la revisión judicial de la denegatoria de la Comisión de desestimar una acción por falta de jurisdicción sobre la materia. Lo importante de esta Sentencia es que partimos de la premisa básica de que dicha Comisión era propiamente una agencia administrativa a la cual le aplicaba la LPAU.[8] No obstante, el caso de autos nos permite pautar el derecho aplicable y y ratificar los criterios originalmente expuestos en dicha sentencia.

A

La Ley Núm. 80 de 1980, *supra*, creó la Comisión para Resolver Controversias Interagenciales con el propósito de que ésta investigue controversias sobre deudas y pagos entre agencias gubernamentales y determine el modo en que deberá pagarse la cantidad adeudada y el monto de dicha cantidad, si esto último estuviera en controversia. Informe de la Comisión de Gobierno de la Cámara de Representantes de Puerto Rico de 24 de abril de 1980 sobre Alcance de la Medida del P.

---

[8] En ese caso, el Juez Asociado señor Fuster Berlingeri emitió una Opinión Disidente en la que adelantó la posición que ahora adopta el Tribunal.

de la C. 1289, pág. 1.[9]   La preocupación principal de la
Asamblea Legislativa al aprobar esta medida era proveer a las
agencias involucradas en la prestación de servicios a otras
agencias un mecanismo que adjudicara de manera rápida
cualquier controversia al respecto. *Id*., a la pág. 2.   En el
proceso de aprobación de la referida ley se consideró con
particular importancia que el retraso de los pagos por razón
de discrepancias entre las partes en cuanto al monto y otros
detalles de las facturas por servicios "afecta[n] las
operaciones y liquidez de las agencias de tipo corporativo
así como las operaciones fiscales de las agencias
concernidas".[10]   *Id*.   A esos efectos se dijo expresamente que:

> [e]l objetivo principal de la medida es
> establecer un mecanismo legal y administrativo
> para resolver, de manera aceptable para las
> partes, las controversias que surgen entre
> Agencias del Gobierno por concepto de pagos y
> deudas entre éstas.   *Id*.

Por su parte, la exposición de motivos de dicha
legislación no amplía mucho más lo que se expresa en el
Informe de la Comisión de Gobierno de la Cámara de
Representantes preparado como parte del proceso de aprobación
por la Asamblea Legislativa.[11]   Sin embargo, añade que el
Secretario de Justicia, el Secretario de Hacienda y el

---

[9] El Informe de la Comisión de Gobierno del Senado de Puerto Rico reproduce sustancialmente el contenido del Informe de la Comisión de Gobierno de la Cámara de Representantes.

[10] Se mencionó que las agencias mayormente concernidas eran la entonces Autoridad de Teléfonos, la Autoridad de Energía Eléctrica, la Autoridad de Acueductos y Alcantarillados, Autoridad de Edificios Públicos, Autoridad de Comunicaciones y la Administración de Servicios Generales.

[11] La Ley Núm. 80 de 1980, *supra*, fue aprobada sin enmiendas y no hay discusión de su alcance en el historial legislativo. Véase, Diario de Sesiones: Procedimientos y Debates de la Asamblea Legislativa de 24 de abril de 1980, Vol. XXXIV.

Director de la Oficina de Gerencia y Presupuesto, miembros que componen la Comisión para Resolver Controversias Interagenciales, cuentan con el "personal técnico, especializado y capacitado para entender en este tipo de controversia". Exposición de Motivos de la Ley Núm. 80 de 1980, *supra*, Leyes de Puerto Rico, pág. 242.

La Ley Núm. 80 de 1980, *supra*, se compone de tres artículos. En el primer artículo se crea la Comisión para Resolver Controversias Interagenciales y se señala que sus miembros serán, como ya se dijo, el Secretario de Justicia, el Secretario de Hacienda y el Director de la Oficina de Gerencia y Presupuesto. 3 L.P.R.A. sec. 1751. Se dispone el término de duración de los cargos de los miembros; el número de miembro que constituye *quórum*; y medidas para casos de inhibición. *Id*. Además, se define el término "agencias gubernamentales" como "cualquier departamento, junta, comisión, negociado, división o cualquier otro organismo gubernamental, *incluyendo a las corporaciones públicas y a los municipios*". *Id*.

El segundo artículo de la ley enumera las funciones y poderes de la Comisión para Resolver Controversias Interagenciales. Especifica que la Comisión tiene poder para investigar controversias entre agencias sobre pagos y deudas y para determinar el monto de la cantidad adeudada y su modo de pago. 3 L.P.R.A. sec. 1752. Con ese propósito, se provee que la Comisión puede requerir que le sean presentados libros, documentos o cualquier evidencia necesaria para adjudicar las controversias ante sí. *Id*. También podrá interrogar testigos bajo juramento. *Id*. En caso de que

alguna parte se niegue a cumplir con sus requerimientos, la Comisión para Resolver Controversias Interagenciales tiene facultad para solicitar al Tribunal de Primera Instancia una orden judicial *so pena* de desacato. *Id.*

Asimismo, este artículo dos de la Ley Núm. 80 de 1980, *supra*, dispone que la Comisión para Resolver Controversias Interagenciales designará de entre el personal de las agencias que dirigen los miembros de la Comisión, los recursos necesarios para cumplir con sus funciones. 3 L.P.R.A. sec. 1752. Se determina en este artículo, además, la manera en que se prorratearán entre las partes involucradas los gastos incurridos por la Comisión durante la investigación y adjudicación del caso. *Id.* Por último, en este artículo se expresa la facultad de la Comisión para Resolver Controversias Interagenciales de formular y adoptar los reglamentos necesarios para el desempeño de sus funciones, los cuales deberán ser aprobados por el Gobernador. *Id.* Conforme a esta disposición, la Comisión aprobó el Reglamento Interno de la Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales de 24 de diciembre de 1985.

Finalmente, el artículo tres de la Ley Núm. 80 de 1980, *supra*, expresa que el procedimiento investigativo puede iniciarse a petición de parte o *motu proprio*, cuando la Comisión considere que se está lesionando la solvencia económica o los servicios esenciales prestados por las agencias en controversia. 3 L.P.R.A. sec. 1753. Las vistas ante la Comisión serán presididas por un examinador, quien formará un expediente del caso. *Id.* Luego de escuchar todas

las partes y recibir la evidencia necesaria, dicho examinador deberá someter a la Comisión para Resolver Controversias Interagenciales un informe con sus recomendaciones para que ésta haga su determinación final. *Id.* Se dispone que la determinación de la Comisión "será final y firme y no será apelable ante ningún organismo judicial o cuasi judicial". *Id.*

B

Por su parte, la Ley de Municipios Autónomos, *supra*, se aprobó en 1991 con el propósito de reformar la organización y funcionamiento de la administración pública de los municipios. López Hernández v. Municipio de Mayagüez, res. el 12 de febrero de 2003, 2003 TSPR 15. Al disponer la independencia administrativa de los municipios frente al gobierno central, en dicha ley se provee como política pública "otorgar a los municipios el máximo posible de autonomía y proveerles las herramientas financieras y los poderes y facultades necesarias para asumir un rol central y fundamental en su desarrollo social, económico y urbano". Art. 1.002 de la Ley de Municipios Autónomos, *supra*, 21 L.P.R.A. sec. 4001 (propósito).

De igual forma, la propia ley expresa que los poderes y facultades concedidas a los municipios se deben interpretar liberalmente, en armonía con la política pública de garantizar a los municipios las facultades jurídicas, fiscales y administrativas que se requieran para atender eficazmente las necesidades de sus habitantes. Art. 1.004 de la Ley de Municipios Autónomos, *supra*, 21 L.P.R.A. sec. 4002; Café Rico, Inc. v. Mun. de Mayagüez, res. el 31 de octubre de

2001, 2001 TSPR 148; First Bank de P.R. v. Mun. de Aguadilla, res. el 17 de enero de 2001, 2001 TSPR 6.

Uno de los múltiples poderes que la Ley de Municipios Autónomos, *supra*, le reconoce a la administración municipal es el de demandar, ser demandado, denunciar, querellarse y defenderse en cualquier tribunal de justicia y organismo administrativo.    Art. 2.001 de la Ley de Municipios Autónomos, *supra*, 21 L.P.R.A. sec. 4051(b).    En cuanto al cobro de deudas en particular, se dispone que:

> Será obligación del Alcalde realizar todas las gestiones necesarias para el cobro de todas las deudas de personas naturales o jurídicas que estuviesen registradas en los libros o récords de contabilidad a favor del municipio **y recurrirá a todas las medidas que autoriza la ley para cobrar dichas deudas dentro del mismo año fiscal en que se registren o hasta la fecha del cobro.  En los casos que sea necesario, se deberá proceder por la vía judicial** y cuando el municipio no cuente con los fondos suficientes para contratar los servicios profesionales legales requeridos, referirá los casos al Secretario de Justicia. Cuando la deuda, por su naturaleza o cuantía, o por ambas, afecte los estimados de presupuesto y/o las cuentas programáticas de asignación de fondos para un año fiscal, tal situación deberá informarse al Comisionado.  Art. 8.003 de la Ley de Municipios Autónomos, *supra*, 21 L.P.R.A. sec. 4353.

Vistas las disposiciones pertinentes de la Ley de Municipios Autónomos, *supra*, y la Ley Núm. 80 de 1980, *supra*, pasemos a analizar si la primera derogó tácitamente la segunda.

C

Conforme el Art. 6 del Código Civil, 31 L.P.R.A. sec. 6, una ley anterior queda tácitamente derogada cuando la nueva contiene preceptos contrarios o irreconciliables.  Cuando los términos de una ley posterior son tan inconsistentes con los

de una ley anterior que ambas no pueden subsistir juntas, se entiende que la posterior enmendó implícitamente la anterior. Farmacias Moscoso v. K-Mart, 138 D.P.R. 497 (1995); Díaz v. Srio. Hacienda, 114 D.P.R. 865 (1983). Una ley que contiene una cláusula que deroga todas las leyes o parte de las leyes que sean incompatibles con sus disposiciones, pero que no derogue expresamente la ley anterior sobre la misma materia, deja en vigor todas las disposiciones de la ley anterior que no estén en contradicción con sus disposiciones. Director I.C.P. v. Fitzgerald, etc., 130 D.P.R. 46 (1992).

En el presente caso, Arecibo alega que la Ley de Municipios Autónomos, *supra*, aprobada en 1991, derogó la Ley Núm. 80 de 1980, *supra*. Conforme a ello, sostiene que es el Tribunal de Primera Instancia quien tiene jurisdicción para resolver la controversia de autos, en lugar de la Comisión para Resolver Controversias Interagenciales, creada por la referida Ley Núm. 80. Dicha tesis fue acogida por la Opinión del Tribunal, la cual concluye que "controversias como la de autos, que involucran particularmente disputas entre Municipios, pueden ser dilucidadas judicialmente porque no está dispuesto en ley que la facultad sobre ellas queda excluida de la autoridad judicial".

No obstante, esta conclusión choca con la letra y el espíritu de la ley que creó la Comisión con el fin de resolver rápidamente controversias sobre el monto o modo de pago que una agencia gubernamental le debe a otra por servicios prestados. Se trata de una comisión que interviene cuando las agencias concernidas no han podido ponerse de

acuerdo respecto a estos asuntos.  Art. 2 de la Ley Núm. 80 de 1980, *supra*, 21 L.P.R.A. sec. 1752.

Por su parte, lo que la Ley de Municipios Autónomos, *supra*, dispone en su artículo 8.003 es la facultad del Alcalde para utilizar las medidas que **la ley autorice** para cobrar las deudas del municipio.  21 L.P.R.A. sec. 4353. Como vemos, una de estas leyes suple la autoridad para actuar, mientras que la otra dispone el curso de acción a seguir.  Se desprende que, aunque estamos ante dos disposiciones que regulan la misma materia, a saber: el cobro de deudas, cada una se refiere a un asunto distinto respecto a esa materia.  De éstas no se desprende ninguna inconsistencia entre sí. Debemos recordar que las leyes que tratan la misma materia deben armonizarse en todo lo posible; la derogación tácita no se favorece.  <u>Cintrón Santana v. Betancourt Lebrón</u>, 131 D.P.R. 1 (1982).

La Opinión del Tribunal también acogió la tesis de Arecibo en cuanto a que la Ley Núm. 80 de 1980, *supra*, menoscaba la autonomía administrativa o fiscal concedida a los municipios mediante la Ley de Municipios Autónomos, *supra*.  No obstante, del mismo texto de la Ley de Municipios Autónomos, *supra*, surge que la autoridad que se le reconoce a los municipios está supeditada a las leyes vigentes y a la Constitución del Estado Libre Asociado de Puerto Rico.  Art. 1.005 de la Ley de Municipios Autónomos, *supra*, 21 L.P.R.A. sec. 4003.  Se dispuso expresamente además que, en cuanto a las deudas de un municipio, el Alcalde tendrá disponible aquellas medidas que autorice la ley.  La vía judicial, que por su puesto es una de estas medidas, se especificó que

podría utilizarse en los casos que sea necesario. Estas expresiones no implican que la vía judicial es la única forma de garantizar el cobro efectivo de las deudas del municipio o que de otra manera no se estaría protegiendo la autonomía del municipio.

La autonomía administrativa que la Ley de Municipios Autónomos proclama, no es óbice para que los municipios acudan a la Comisión para Resolver Controversias Interagenciales como parte de las gestiones necesarias para cobrar sus deudas antes de acudir a la vía judicial. Máxime cuando el trámite administrativo ofrece mayor agilidad procesal y minimiza la inversión de recursos económicos. Ello contribuye, a su vez, con el cumplimiento del propósito de la Ley Núm. 80 de 1980, *supra*, de disponer un proceso que agilice la adjudicación de pagos y deudas entre las agencias concernidas en protección precisamente de su autonomía fiscal. Este factor también armoniza perfectamente con el fin primordial de la Ley de Municipios Autónomos, *supra*, de proveer independencia fiscal y administrativa a los municipios.

De igual forma, la disponibilidad de foros administrativos para atender controversias que involucren a la administración municipal no implica de ninguna manera un menoscabo a la independencia para administrar sus recursos que la Ley de Municipios Autónomos, *supra*, le reconoce a los municipios. La misma ley dispone la aplicación a los municipios de remedios administrativos provistos en otras leyes, como por ejemplo, apelaciones a la Junta de Apelaciones del Sistema de Administración de Personal y la

revisión administrativa de la determinación de la Junta de Planificación de anular la aprobación de un proyecto por el municipio.  Arts. 12.027 y 13.016 de la Ley de Municipios Autónomos, *supra*,  21 L.P.R.A. secs. 4577 y 4614.

En fin, del análisis en conjunto de las disposiciones de la Ley de Municipios Autónomos de 1991, *supra*, y la Ley Núm. 80 de 1980, *supra*, no se desprende incompatibilidad alguna en cuanto a la facultad de los municipios para defender sus intereses en el foro judicial o administrativo, según sea el caso.  La Ley Núm. 80 de 1980, *supra*, dispone el procedimiento a seguir para cobrar una deuda municipal en un caso determinado -cuando el deudor es una agencia según se define en dicha ley-.  Por su parte, la Ley de Municipios Autónomos, *supra*, le suple autoridad a la administración municipal para acudir a cualquier foro, incluso el administrativo, o el judicial, cuando sea necesario.  El foro administrativo también es un mecanismo efectivo para proteger los intereses que promueve la Ley de Municipios Autónomos, *supra*, con el beneficio adicional de ser un foro más ágil y económico.

II

A

Examinada la ley orgánica de la Comisión, procede resolver si está cubierta por la LPAU.  La Opinión del Tribunal concluye que la Comisión no es una agencia administrativa a la que le aplica la LPAU.  A esos efectos, la Opinión se limita a reseñar muy someramente las tres únicas secciones que componen la Ley Núm. 80 de 1980, *supra*, la cual implanta dicha comisión.

No obstante, la determinación de qué es una agencia administrativa conlleva un análisis más abarcador y complejo. Esta determinación no puede depender exclusivamente de si la ley que crea la entidad en cuestión provee o no revisión judicial o del número de sus componentes o de quiénes la componen. Mas aun, cuando estamos ante una entidad cuya ley habilitadora se aprobó antes de que la LPAU, *supra*, entrara en vigor.

Al determinar si cierta entidad es o no una "agencia administrativa", necesariamente hay que examinar el propósito y las funciones que legalmente se le asignaron en comparación con el andamiaje legislativo dispuesto en la LPAU. Ortiz Rivera v. Panel sobre el Fiscal Especial Independiente, res. el 8 de octubre de 2001, 2001 TSPR 134; Pagán Ramos v. Fondo del Seguro del Estado, 129 D.P.R. 888 (1992). En otras palabras, procede comparar las disposiciones de la ley que crea dicha entidad con las disposiciones pertinentes de la LPAU.

El propósito central de la LPAU fue disponer un cuerpo de reglas mínimas que proveyeran uniformidad al proceso decisorio y reglamentario de la Administración pública. Pagán Ramos v. Fondo del Seguro del Estado, *supra*. Con ella se creó un andamiaje de reglas que deberán observarse por toda agencia al formular reglas y reglamentos que definan los derechos y deberes de la ciudadanía y al adjudicar los derechos y deberes de personas particulares. *Id*. La dimensión de la aplicación de la LPAU es amplia: "aplicará a todos los procedimientos administrativos conducidos ante todas las agencias que no estén expresamente [excluidos]". 3 L.P.R.A.

sec. 2103; <u>Olmeda Díaz v. Depto. de Justicia</u>, 143 D.P.R. 596, 599 (1997) (con excepción de las entidades, funciones y actividades expresamente excluidas, la LPAU aplica a todos los procedimientos administrativos ante todas las agencias).

Conforme a lo anterior, y para asegurar que la mayor parte del Gobierno de Puerto Rico estuviese cubierto, la LPAU adoptó la definición más dilatada del término "agencia". <u>Olmeda Díaz v. Depto. de Justicia</u>, *supra*, a la pág. 599. Así, se dispone que "agencia" significa:

> [...] cualquier junta, cuerpo, tribunal examinador, corporación pública, comisión, oficina independiente, división, administración, negociado, departamento, autoridad, funcionario, persona, entidad **o cualquier instrumentalidad del Estado Libre Asociado de Puerto Rico u organismo administrativo autorizado por ley a llevar a cabo funciones de reglamentar, investigar, o que pueda emitir una decisión**, o con facultades para expedir licencias, certificados, permisos, concesiones, acreditaciones, privilegios, franquicias, acusar o adjudicar [...]. 3 L.P.R.A. sec. 2102(a).

De esta definición se excluyen varias entidades gubernamentales como el Senado y la Cámara de Representantes de la Asamblea Legislativa, la Rama Judicial, la Oficina Propia del Gobernador, la Guardia Nacional de Puerto Rico, los Municipios, la Comisión Estatal de Elecciones, el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos, y la Junta Asesora del Departamento de Asuntos del Consumidor sobre el Sistema de Clasificación de Programas de Televisión y Juguetes Peligrosos. *Id.*

A la luz del texto mismo de la ley, todos los organismos gubernamentales autorizados por ley a *"reglamentar"*, *investigar"* o *"adjudicar"*, se rigen por la LPAU. 3 L.P.R.A.

sec. 2102(a); Pagán Ramos v. Fondo del Seguro del Estado, *supra*, a la pág. 899. Respecto a la parte de la definición de agencia que se refiere **a cualquier instrumentalidad del gobierno de Puerto Rico u organismo administrativo autorizado por ley a llevar a cabo funciones de *reglamentar, investigar, o que pueda emitir una decisión*,** mas adelante la ley misma define lo que es reglamentar o emitir una decisión para propósitos de dicha definición. En su sección 1.3, la LPAU aclara que "adjudicación" es el pronunciamiento mediante el cual una agencia determina los derechos, obligaciones o privilegios que correspondan a una parte. 3 L.P.R.A. sec. 2102(b). "Parte" se define como, entre otras cosas, toda persona o agencia a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción. 3 L.P.R.A. sec. 2102(j). Por otro lado, el trámite seguido por una agencia para la formulación o derogación de una regla o reglamento se trata del procedimiento de "reglamentación". 3 L.P.R.A. sec. 2102(m).

Al interpretar el término "agencia" de la LPAU, en Ortiz Rivera v. Panel sobre el Fiscal Especial Independiente, *supra*, reiteramos que se trata de una definición "sumamente amplia". A esos efectos expresamos que:

> De hecho, es tan amplia que prácticamente cobija a todas y cada una de las agencias administrativas del Estado Libre Asociado, "las cuales se encuentran ubicadas en la rama ejecutiva del gobierno". Surge asimismo que la determinación de si un foro es o no una "agencia" claramente gira en torno a las funciones que esté legalmente "autorizada" a llevar a cabo. **Es decir, la disyuntiva de si una agencia, cuerpo, instrumentalidad, funcionario, oficina, etc., debe ser o no considerada una "agencia", ha de resolverse en atención a la autoridad legal que tiene para actuar o disponer de un asunto de**

**manera final y obligatoria**. (Escolios omitidos). <u>Ortiz Rivera v. Panel sobre el Fiscal Especial Independiente</u>, *supra*.

Asimismo, hemos citado al tratadista en derecho administrativo Davis para ilustrar la naturaleza de una agencia como un organismo o entidad gubernamental que no es una corte o un cuerpo legislativo, y que afecta derechos de partes privadas mediante la adjudicación o la reglamentación. <u>Pagán Ramos v. Fondo del Seguro del Estado</u>, *supra*, a la pág. 899.

En conclusión, nuestra jurisprudencia es clara en cuanto a hacer efectiva la intención legislativa al aprobar y enmendar la LPAU de establecer un cuerpo mínimo de reglas uniformes "cuyos efectos alcan[cen] *a toda la operación de la Rama Ejecutiva del Gobierno y afect[en] a toda la ciudadanía*" *y de "excluir de su alcance solamente un pequeño número de entidades expresamente identificadas en [el texto de la ley]"*. (Énfasis suplido y en el original). *Id*., a la pág. 900, *citando* el Informe de la Comisión de Gobierno de la Cámara de Representantes sobre el P. De la C. 1120 de 23 de octubre de 1990, pág. 4, en ocasión de la aprobación de ciertas enmiendas a la definición de agencia de la LPAU.

Por ende, procede concluir que la Comisión para Resolver Controversias Interagenciales es ciertamente una agencia administrativa. El propósito central de dicha Comisión es servir como "un mecanismo legal y administrativo para resolver [...] las controversias que sur[jan] entre Agencias del Gobierno por concepto de pagos y deudas entre éstas". Ley Núm. 80 de 1980, *supra*. Se trata de una entidad gubernamental autorizada por ley a *investigar y adjudicar*

controversias sobre derechos y obligaciones entre personas específicas.

Mas aun, y a pesar de que la Comisión para Resolver Controversias Interagenciales fue creada antes de la aprobación de la LPAU, sus disposiciones son similares a las agencias administrativas que de ordinario se rigen por dicha ley. La Comisión tiene poder para investigar y adjudicar controversias económicas entre agencias particulares. Con ese propósito, puede requerir la presentación de documentos o cualquier evidencia necesaria; interrogar testigos bajo juramento; y solicitar al Tribunal de Primera Instancia que ordene la comparecencia de testigos o entrega de documentos. Se dispone además, la intervención de un oficial examinador encargado de presidir la vista y rendir un informe a la Comisión para que ésta haga su determinación final.

Las funciones y facultades de la Comisión para Resolver Controversias Interagenciales, unidas a la amplitud del alcance de la LPAU y de su definición de lo que es una agencia, establecen que la Comisión es en efecto una agencia administrativa.

B

En cuanto a la jurisdicción de la Comisión, en vista de lo que se concluye antes y del hecho de que no se provee expresamente jurisdicción exclusiva, concluimos que ésta posee jurisdicción primaria. Por lo tanto, la parte aquí demandante debió acudir en primer lugar a dicha Comisión, en lugar de al foro judicial. Veamos.

La doctrina de jurisdicción primaria aplica cuando hay que determinar cuál foro adjudicativo debe hacer una

determinación inicial del asunto en controversia. En otras palabras, se refiere a si la acción debe ser presentada inicialmente ante la agencia o ante el tribunal. Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Ed. Forum, 2001, pág. 433. Esta norma responde a la deferencia que merecen las agencias, las cuales están mejor preparadas que los tribunales debido a su especialización y al conocimiento obtenido a través del tiempo en el ámbito que se desempeñan. *Id.*, a la pág. 434-435. A pesar de que una agencia con jurisdicción primaria no excluye la jurisdicción del tribunal en el mismo asunto, la aplicación de la referida doctrina tiene el efecto de concederle primacía a la intervención de la agencia administrativa en primera instancia. Rivera v. Panel sobre el Fiscal Especial Independiente, *supra*. De esa manera, del caso llegar al tribunal, éste tendrá el beneficio del parecer del ente administrativo especializado sobre la controversia. *Id*.

En el caso de autos, es evidente que no existe jurisdicción primaria exclusiva pues el legislador no lo dispuso así en el texto de la ley. Rovira v. Puerto Rico Telephone Company, 96 D.P.R. 77 (1968). No obstante, del texto de la Ley Núm. 80 de 1980, *supra*, y de la preocupación que motivó al legislador a aprobarla, surge que la Comisión para Resolver Controversias Interagenciales sí posee jurisdicción primaria en el asunto específico que le fue encomendado atender.

Como explicáramos, el propósito de la creación de la Comisión fue proveer un mecanismo administrativo que resuelva

de manera rápida y económica las controversias sobre deudas y pagos entre agencias gubernamentales.  Se desprende de esto que se pretendió aprovechar la flexibilidad y agilidad de los procedimientos administrativos y evitar un extenso trámite judicial.  De igual forma, se buscó aprovechar el personal especializado de las respectivas agencias que dirigen los miembros de la Comisión al disponerse que se nombrarían de entre sus empleados el "personal técnico, especializado y capacitado para entender en este tipo de controversia". Exposición de Motivos de la Ley Núm. 80 de 1980, *supra*, Leyes de Puerto Rico, pág. 242.  En particular, se dispuso que se designarían de entre estas agencias los examinadores y auditores necesarios para realizar de la manera más eficiente los propósitos de la ley.  Art. 2 de la Ley Núm. 80 de 1980, *supra*, 3 L.P.R.A. sec. 1752(2).  Véase además, la Opinión del Secretario de Justicia número 1985-19 en la que se concluye que controversias como éstas deben ser sometidas a la Comisión que es el "organismo administrativo especializado, creado expresamente por ley con *jurisdicción primaria* para investigar y resolver estos casos en específico".  (Énfasis suplido).

De estas disposiciones se desprende la intención del legislador de proveer un foro especial para atender inicialmente las controversias sobre pagos y deudas entre agencias gubernamentales con prelación al foro judicial.  De esa manera, se buscó proveer los beneficios de especialización y agilidad del trámite administrativo en

estos casos.[12] Por consiguiente, en el presente caso, Arecibo debió acudir en primer lugar a la Comisión para Resolver Controversias Interagenciales para reclamar lo adeudado por Quebradillas.

De no estar conforme con la decisión que en su día emita la Comisión, cualquier parte puede acudir al Tribunal de Apelaciones en solicitud de revisión judicial conforme lo dispone la sección 4.1 de la LPAU. 3 L.P.R.A. sec. 2171. Ello es así pues cuando se aprobó la LPAU sus preceptos pertinentes a la revisión judicial se hicieron extensivos a todas las agencias cubiertas por el estatuto, incluyendo a la Comisión para Resolver Controversias Interagenciales. Reiteradamente hemos resuelto que, las disposiciones de la LPAU prevalecen sobre cualquier disposición legal de una agencia en particular que sea contraria a ésta, cuando la misma se aprobó previo a la vigencia de la primera. Hernández v. Golden Tower Development Corp., 125 D.P.R. 144 (1990); además, Asoc. de Dueños de Casas v. Junta de Planificación, 148 D.P.R. 307 (1999); Carabani et al. V. A.R.P.E., 132 D.P.R. 938 (1993); Asoc. de Farmacias v. Departamento de Salud, res. el 5 de febrero de 2002, 2002 TSPR 13; Aponte v. Policía de Puerto Rico, 142 D.P.R. 75 (1996) (a partir de la enmienda de 1995 de la LPAU que dispuso que la moción de reconsideración ante las agencias

---

[12] Nótese además, que de resolverse que los municipios no tienen que acudir inicialmente a la Comisión para Resolver Controversias Interagenciales, según resuelve la Opinión mayoritaria, la Ley Núm. 80 de 1980, supra, quedaría prácticamente sin vigencia alguna. De esa manera se desperdiciaría un proceso valioso para cobrar deudas interagenciales que busca evitar largos litigios en beneficio de las operaciones y liquidez de las agencias a las que aplica.

administrativas no sería jurisdiccional, toda disposición en la ley habilitadora de cualquier agencia que disponga lo contrario, y haya sido aprobada previo a dicha enmienda, queda sin efecto). En el presente caso, la disponibilidad de revisión judicial de las determinaciones de las agencias que implanta la LPAU es posterior a la prohibición contenida en la Ley Núm. 80 de 1980, *supra,* por lo que la misma no prevalecería. *Véase* 3 L.P.R.A. sec. 2171.

A la luz de todo lo anterior, confirmaríamos la decisión del Tribunal de Apelaciones y desestimaríamos la reclamación de Arecibo contra Quebradillas en el caso de autos.


                         Federico Hernández Denton
                              Juez Asociado