

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>    Recurrido<br><br>        v.<br><br>Javier De Jesús Carrillo<br><br>    Acusado<br><br>International Fidelity<br>Insurance Company<br><br>    Fiadora Peticionaria | Certiorari<br><br>2010 TSPR 91<br><br>179 DPR \_\_\_\_ |

Número del Caso: CC-2008-486

Fecha: 14 de junio de 2010

Tribunal de Apelaciones:

> Región Judicial de Carolina Panel XIII

Jueza Ponente:
> Hon. Luis A. Rosario Villanueva

Abogada de la Parte Peticionaria:

> Lcda. Magda Enid Ralat Ballester

Oficina de la Procuradora General:

> Lcda. María T. Caballero García
> Procuradora General Auxiliar

Materia: Art. 401 SC, Art. 252 CP, Art. 284 CP

Este documento constituye un documento oficial del   Tribunal Supremo que está sujeto a los cambios y correcciones del pr oceso de compilación y publicación oficial de las decisiones   del Tribunal. Su distribución electrónica se hace como un servicio p úblico a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Recurrido

       v.

Javier De Jesús Carrillo          CC-2008-486       *Certiorari*

     Acusado

International Fidelity
Insurance Company

   Fiadora-Peticionaria

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

**(En reconsideración)**

San Juan, Puerto Rico, a 14 de junio de 2010.

Hoy, reconsideramos nuestra determinación en *Pueblo v. De Jesús Carrillo; International Fidelity Insurance Company*, res. 30 de diciembre de 2009, 177 D.P.R. ___ (2009), 2009 T.S.P.R. 189, 2009 J.T.S. ___. En la Sentencia aludida determinamos que no procedía la confiscación de la fianza prestada a favor de un acusado al descubrirse que la identidad que éste proveyó a las autoridades era falsa. Entonces, entendimos que el error en la identidad del acusado configuró un vicio del consentimiento que invalidó el contrato de fianza puesto que la fiadora descansó razonablemente en la identificación provista por el Estado.

Tras considerar la *Moción de Reconsideración* presentada por el Pueblo de Puerto Rico, representado por la Procuradora General, en esencia, resolvemos que el error en la identidad del acusado es uno de carácter esencial o sustancial en la formación del Contrato de Fianza. No obstante, el error sufrido en el caso de autos no es uno excusable. La fiadora no demostró ni un mínimo de diligencia al momento de su formación. Por lo tanto, reconsideramos nuestra determinación previa y concluimos que tal error no anula el referido contrato.

I

El 13 de abril de 2007, un individuo identificado como Javier De Jesús Carrillo fue intervenido y arrestado por alegada violación al Artículo 401 de la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401. Esta persona proveyó al agente del orden público una licencia de conducir con foto y firma del estado de California, una tarjeta de seguro social con su nombre, número y firma, y una tarjeta de identificación del estado de Nevada con foto y firma. Además, informó que residía en un condominio ubicado en el área de Isla Verde. Cabe apuntar, en esta etapa, que ninguno de los documentos presentados corroboraba la dirección ofrecida verbalmente por el acusado.

El 14 de abril de 2007, el Ministerio Público sometió la denuncia a base de la información suministrada. Ese

mismo día fue celebrada la Vista de Determinación de Causa para Arresto, en la que se determinó causa probable para el mismo y se fijó una fianza por la suma de cien mil (100,000) dólares. Conforme al proceso correspondiente, el individuo fue entrevistado e investigado por un oficial de la Oficina de Servicios con Antelación al Juicio (OSAJ).[1] Al no poder prestar la cantidad impuesta, éste fue fichado por la Oficina de Servicios Técnicos de la Policía y, posteriormente, ingresado al Centro de Detención Correccional de Bayamón.

---

[1] El procedimiento de evaluación e investigación de la información suministrada por los imputados es llevado conforme al Reglamento sobre Procedimientos Uniformes para la Evaluación, Recomendación de Libertad Provisional, Supervisión y Seguimiento de Imputados de Delito bajo la Jurisdicción de la Oficina de Servicios con Antelación al Juicio, Reglamento Núm. 5991, Departamento de Estado, 6 de julio de 1999. Éste incluye una entrevista inicial con un Oficial de la Unidad de Evaluación y Recomendación de la Oficina de Servicios con Antelación al Juicio (OSAJ) quien recoge la información demográfica ofrecida por el imputado y la verifica en los sistemas de información disponibles. Tal como expone el Artículo 6(c) de la Ley Núm. 177 de 12 de agosto de 1995, según enmendada, conocida como Ley de la Oficina de Servicios con Antelación al Juicio, 4 L.P.R.A. sec. 1307, éstos incluyen el Sistema de Información de Justicia Criminal (SIJC), el National Crime Information Center (NCIC), el *Vehicle and Driver Information System* (VADIS/DAVID), la Oficina de la Administración de los Tribunales (OAT) y cualesquiera otros sistemas de información análogos.

Una vez realizada dicha búsqueda, el Oficial cumplimenta el formulario *Informe* (que se nutre también de información provista por el imputado en una segunda entrevista) y que se somete con las debidas recomendaciones al tribunal luego de evaluar la información de acuerdo con los *Criterios de Evaluación de Riesgo para Recomendaciones al Tribunal y Supervisión por OSAJ*. No obstante, **no es hasta que el tribunal decreta la libertad provisional bajo la jurisdicción de la OSAJ** que ésta toma fotografías del liberado y las registra en el *Registro de Cámara Instantánea*. Además, le solicita al liberado en la denominada "entrevista social" ciertos documentos con el propósito de verificar sus datos personales. Éstos incluyen: cartas de recomendación de vecinos, amigos o familiares con dirección y teléfonos distintos, recibo reciente de luz, agua o teléfono, certificado de buena conducta, acta de nacimiento, entre otros. **Es en esta etapa que las referencias y la información provistas por el liberado son, pues, verificadas por los recursos humanos de la Oficina, incluyendo la realización de las investigaciones de campo pertinentes.** Esta información sirve para determinar los niveles de supervisión requeridos. Reglamento sobre Procedimientos Uniformes para la Evaluación, Recomendación de Libertad Provisional, Supervisión y Seguimiento de Imputados de Delito bajo la Jurisdicción de la Oficina de Servicios con Antelación al Juicio, *supra*, págs. 42-43, 54.

El 23 de julio de 2007, *International Fidelity Insurance Company* (International o "la fiadora"), prestó la fianza correspondiente a favor del acusado tras descansar en la información obtenida por el Estado.

Llegado el día del juicio en su fondo el acusado no compareció. Como consecuencia, el tribunal emitió una orden de mostrar causa por la cual no se debía confiscar la fianza, siendo notificada ésta el 13 de agosto de 2007. En dicha fecha, International comenzó una investigación para dar con el paradero del acusado. La fiadora, entonces, se percató de que la identidad ofrecida por éste no concordaba con la del verdadero Javier De Jesús Carrillo y lo comunicó al tribunal.

En una segunda vista para mostrar causa – celebrada el 13 de noviembre de 2007 luego de que la fiadora solicitara tiempo adicional para localizar al fiado – el tribunal consideró que no medió explicación satisfactoria para el incumplimiento de las condiciones de la fianza por lo que dictó sentencia sumaria contra la fiadora confiscando el importe de la referida fianza. Ésta fue notificada el 6 de diciembre de 2007.

Oportunamente, International recurrió al Tribunal de Apelaciones. El tribunal apelativo intermedio confirmó la Sentencia recurrida. Dicho foro concluyó:

> A la luz de los hechos del presente caso, surge del expediente que la fiadora apelante no fue diligente al acceder afianzar la comparecencia del acusado. Aunque alega que su consentimiento se basó en el error de identidad de la persona del imputado, según surge de la denuncia y que

ese documento goza de fe pública, lo cierto es que las Reglas de Procedimiento Criminal permiten que una denuncia o acusación sea enmendada para corregir errores de forma o de sustancia en cualquier momento hasta que recaiga la sentencia de convicción.

La fiadora apelante debió ser más diligente y debió hacer un ejercicio razonable de solicitarle al imputado una identificación con foto u otro medio de identificación para asegurarse que era quien decía ser o corroborara su verdadera identidad. A pesar de su vasta experiencia y conocimiento, la apelante no realizó ningún esfuerzo por percatarse de que la persona que iba a fiar era quien decía ser. Ahora no puede alegar que su consentimiento fue viciado porque el error en la persona del imputado fue provocado por el Estado. Su falta de diligencia no es excusable, por lo que no puede reclamar que el error vició el consentimiento para anular el contrato.

Inconforme, International acudió ante este Foro mediante el recurso de *certiorari*. En dicho recurso se nos planteó que se cometieron los siguientes errores:

**Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Carolina (Honorable Juez, Inés Y. Rivera Aquino), al negarle a la parte apelante, una vista evidenciaría, para sostener sus alegaciones de nulidad en el contrato de fianza por razón de vicio en el consentimiento.**

**Erró el Honorable Tribunal de Apelaciones, al confirmar que la peticionaria que "tampoco la parte apelante (peticionaria) ha presentado diligencia alguna llevada a cabo con las agencias pertinentes para dar con el paradero de este imputado y presentado ante los procedimientos criminales pendientes, como se comprometió al prestar la fianza".**

**Erró el Honorable Tribunal de Apelaciones, al confirmar la sentencia del Tribunal de Primera Instancia, al concluir que el error en la identificación provista por el Estado, bajo las circunstancias particulares de este caso, no constituye un vicio en el consentimiento lo suficientemente válido para anular el Contrato de Fianza, objeto de este caso.**

> **Erró el Honorable Tribunal de Apelaciones, al confirmar y concluir que el Contrato de Fianza, objeto de este caso, la identidad de la persona a ser fiada, provista por el Estado, no tiene relevancia alguna y "que poco importa si el imputado era Javier De Jesús Carrillo o Fulano de tal".**

> **Erró el Honorable Tribunal de Apelaciones, al confirmar y concluir que la identidad provista por el Estado al momento de perfeccionarse el Contrato de Fianza no tiene relevancia alguna y poco importa la identificación del acusado, ya que las Reglas de Procedimiento Criminal permiten que la denuncia o acusación sea enmendada en cualquier momento hasta que recaiga la sentencia por convicción.**

> **Erró el Honorable Tribunal de Apelaciones, al concluir que la identidad del acusado-fiado que provee el Estado en su gestión como parte contratante, al momento de perfeccionarse el Contrato de Fianza, no es de carácter sustancial.**

> **Erró el Honorable Tribunal de Apelaciones, al confirmar no aceptar ni concluir que la información provista por el Estado, sobre la identidad del acusado-fiado, bajo las circunstancias particulares de este caso, no constituía ser una información razonablemente confiable bajo la cual se podía prestar la fianza en controversia, y en vista de que la información sobre la identidad del acusado provista por el Estado resultó ser falsa debía de eximirse de responsabilidad a la peticionaria por dicha Fianza. State v. Lanns, 95-781, p.4 (la.App. 1 Cir. 11/9/95), 605 So. 2d 66, 67 y State v. Turner, 893 So. 2d 900 (La. App. 3 Cir, 12/8/04).**

Así las cosas, emitimos una Sentencia en el caso de autos, *Pueblo v. De Jesús Carrillo; International Fidelity Insurance Company*, *supra*, mediante la cual determinamos que no procedía la confiscación de la fianza por existir un vicio en el consentimiento que invalidó el Contrato de Fianza suscrito. Esto tras descubrirse que la identidad que el acusado proveyó a las autoridades era falsa y esta

información fuera en la que descansara la fiadora para medir su riesgo.

Inconforme, comparece el Pueblo de Puerto Rico solicitando que reconsideremos la Sentencia dictada y que confirmemos la determinación emitida por el Tribunal de Apelaciones. Tras examinar los argumentos esgrimidos, acogemos la *Moción de Reconsideración* instada y reconsideramos nuestra decisión en el caso de autos.[2] Como resultado, confirmamos la sentencia del Tribunal de Apelaciones. Veamos.

## II

En estrecha relación con la presunción de inocencia que cobija a todo acusado, la Sección 11 del Artículo II de la Constitución de Puerto Rico garantiza que:

> Todo acusado tendrá derecho a quedar en libertad bajo fianza antes de mediar un fallo condenatorio.

---

[2] Ciertamente este Tribunal puede reconsiderar una determinación original, particularmente cuando apercibimos las consecuencias indeseadas que ésta pueda causar. En el caso de autos, advertimos que no modificar nuestra determinación, podría tener unos resultados perjudiciales en los contratos de fianza criminal, pudiendo prestarse para un uso inescrupuloso. Asimismo, impone al Estado todas las consecuencias. Al respecto, la Procuradora General destaca en su *Moción de Reconsideración* que "[e]l resultado de la sentencia […] resulta sustancialmente detrimental para el interés del Estado, en quien este Alto Foro ha descargado totalmente el deber de informarse que se supone que ambos contratantes comparten".

Por otro lado, la parte puede presentar nuevos argumentos, o "puede volver a argumentar en otra forma lo que ya se discutió antes, para demostrar al tribunal que se ha cometido un error y que debe reconsiderar su pronunciamiento". R. Hernández Colón, *Derecho Procesal Civil*, San Juan, Ed. Lexis Nexis, pág. 341. No es la primera vez que este Foro advierte la necesidad de acoger – sin cambio alguno en los fundamentos y análisis – una ponencia previamente publicada como disidente y en un periodo de tiempo corto. Véanse, *Mun. Arecibo v. Mun. Quebradillas*, 161 D.P.R. 109 (2004) (Opinión disidente del Juez Hernández Denton); *Municipio Arecibo v. Municipio Quebradillas*, 163 D.P.R. 308 (2004)(Opinión del Tribunal emitida por el Juez Hernández Denton).

> La detención preventiva antes del juicio no
> excederá de seis meses. Las fianzas y las multas
> no serán excesivas. Art. II, Sec. 11, Const. P.R,
> L.P.R.A., Tomo 1, ed. 2008, pág. 343.

En nuestro ordenamiento este derecho se hace efectivo a través del contrato de fianza, sujeto a las exigencias de las Reglas de Procedimiento Criminal, ya sea mediante el reconocimiento de un fiador o por medio del depósito del importe de la fianza por el acusado. No obstante, del acusado no prestar la misma, el Estado lo mantendrá bajo su custodia por un periodo que -por disposición constitucional- no podrá exceder de los seis (6) meses. *Sánchez Álvarez v. González*, 78 D.P.R. 849 (1955).

El contrato de fianza criminal es uno *sui generis* entre el fiador y el Estado por el que el Estado transfiere la custodia del acusado al fiador y éste último se compromete a garantizar la comparecencia del acusado durante todo el procedimiento criminal seguido en su contra. *Pueblo v. Colón*, 161 D.P.R. 254 (2004); *Pueblo v. Martínez Hernández*, 158 D.P.R. 388 (2003); *Pueblo v. Newport Bonding & Surety Co.*, 145 D.P.R. 546 (1998). No obstante, como todo contrato de fianza siempre hay tres (3) partes involucradas – acreedor, deudor-fiado y fiador – lo que da lugar a una serie de relaciones jurídicas entre dichos sujetos que no pueden ser descartadas ligeramente.[3]

---

[3] "Es normal que el contrato de fianza se celebre entre el acreedor de otro y el fiador, por ser las partes acreedora y deudora en la relación accesoria de fianza. Sin embargo, la razón o causa determinante de que alguien se obligue a pagar una deuda ajena está en la relación que media entre el fiador y el deudor principal, que deberá calificarse en cada caso según su propia naturaleza […], con independencia de la relación de fianza que es la existente entre

J. Alventosa del Río, *La Fianza: Ámbito de Responsabilidad*, Granada, Ed. Comares, 1988, pág. 11.

En el contexto criminal, el contrato de fianza tiene como objetivo asegurar la comparecencia de la persona acusada ante el tribunal a todas las etapas del proceso judicial. Regla 219 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.219. Es por tal motivo que la responsabilidad del fiador no se limita a la prestación de la fianza. Como parte de las particularidades del contrato de fianza criminal, el fiador está obligado a tomar parte activa en todo el proceso penal para estar al tanto del paradero del imputado de delito y asegurar su sumisión al proceso criminal pendiente. *Pueblo v. Colón*, *supra,* págs. 260-61; *Pueblo v. Martínez Hernández*, *supra*. Esto presupone, por lo tanto, un alto grado de diligencia de su parte, particularmente en aquellos casos en los que la fiadora es una corporación que se dedica lucrativamente a ese negocio. *Pueblo v. Colón*, *supra,* pág. 266.

Toda vez que la custodia del acusado ha sido transferida al fiador, la incomparecencia del custodio ante el tribunal representa el incumplimiento del fiador de sus obligaciones. *Pueblo v. Colón*, *supra*. Por dicho incumplimiento deberá responder con la garantía ofrecida según el procedimiento de confiscación de fianza establecido en la Regla 227(a) de Procedimiento Criminal, *supra*, R. 227(a). Dicho precepto dispone que de no mediar

---

acreedor y fiador". J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra. ed. Barcelona, Ed. Bosch, 1988, Tomo II, vol. I pág. 596.

una explicación satisfactoria para el incumplimiento, el tribunal procederá a dictar una sentencia sumaria contra los fiadores y confiscará el importe de la fianza.

III

En el caso de autos, la fiadora aduce que medio vicio en su consentimiento por error y que éste conlleva la anulabilidad del contrato. Esto porque confió en la identificación provista por el Estado que mediante varias de sus instituciones intervino, entrevistó y mantuvo la custodia del individuo bajo una identidad falsa. Apunta, además, que le es imposible ubicar y arrestar al acusado debido al error de identidad cometido por la "crasa falta de diligencia" del Estado que le "indujo a error" haciéndola entrar a un contrato bajo falsa creencia. Por tanto, procedemos a profundizar en el estudio del vicio en el consentimiento por error y su aplicación en el Contrato de Fianza.

Todo contrato requiere del consentimiento de los contratantes, de un objeto cierto que sea materia del contrato y de causa. 31 L.P.R.A. sec. 3391. A tenor con estos requisitos, el Artículo 1217 del Código Civil expone que "[s]erá nulo el consentimiento prestado por error, violencia, intimidación o dolo". 31 L.P.R.A. sec. 3404. En particular, el error como vicio en el consentimiento ocurre cuando, "la ignorancia o una falsa información ha inducido al declarante a decidir algo que no es lo que realmente le hubiese interesado". J. Puig Brutau, *Fundamentos de Derecho*

*Civil*, *supra*, pág. 81. No obstante, no todo error invalida el consentimiento y, por consiguiente, el contrato. Nuestro ordenamiento requiere, en lo pertinente, que éste recaiga:

> …sobre la sustancia de la cosa que fuere objeto del contrato, o sobre aquellas condiciones de la misma que principalmente hubiesen dado motivo a celebrarlo.
>
> El error sobre la persona sólo invalidará el contrato cuando la consideración a ella hubiere sido la causa principal del mismo.
>
> El simple error de cuenta sólo dará lugar a su corrección. 31 L.P.R.A. sec. 3405.

Cónsono con lo anterior, el error como causa de invalidación del contrato es excepcional por presumirse la validez del contrato y del consentimiento. Por lo tanto, quien invoca el error tiene la carga de probarlo. *Capó Caballero v. Ramos*, 83 D.P.R. 650, 673 (1961); L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial,* 6ta ed. Madrid, Ed. Thomson/Civitas, 2007, pág. 209; J.R. Vélez Torres, *Curso de Derecho Civil: Derecho de Contratos*, San Juan, Revista Jurídica de la Universidad Interamericana de Puerto Rico, 1990, pág. 53. Asimismo, y conforme nos hemos expresado en distintas ocasiones, para que éste anule un negocio jurídico, se requiere principalmente que el error sea uno esencial y excusable. *Capó Caballero v. Ramos*, *supra,* pág. 673; Díez-Picazo, *op. cit.*, pág. 213.

A. *Error esencial*

El error –sobre la sustancia de la cosa que fuere objeto del contrato o sobre aquellas condiciones de la

misma- es esencial cuando fue determinante para la celebración del negocio por la parte contratante que lo alega. *Coop. La Sagrada Familia v. Castillo,* 107 D.P.R. 405 (1978). El error esencial incluye el error en la identidad, la materia o las cualidades esenciales de la cosa, siempre y cuando, éstas fueran especialmente tenidas en cuenta. Puig Brutau, *op. cit.,* pág. 85. A esos efectos, lo importante es que el tribunal quede convencido de que del contratante haber conocido su error, éste no hubiese celebrado el contrato. *Coop. La Sagrada Familia v. Castillo, supra.* Asimismo, hemos expresado que "la apreciación de la esencialidad del error requiere prueba y constancia del nexo que en cada caso tenga aquél con los fines y objeto que las partes hayan perseguido y tenido en cuenta al contratar". *Íd.*

B. *Error excusable*

Por otro lado, es preciso que el error sea excusable, esto es que derive de actos desconocidos del obligado sin que tal desconocimiento haya podido ser evitado con mediana prudencia o diligencia, que no sea imputable al que lo sufre. *Capó Caballero v. Ramos, supra;* Díez-Picazo, *op. cit.,* pág. 215. En *Capó Caballero v. Ramos, supra,* citando con aprobación las manifestaciones del Tribunal Supremo de España expresamos que "es mucho menos admisible el error «cuando quienes contratan *son personas peritas o conocedoras del respectivo negocio*»". *Id.,* pág. 677.

Respecto a la diligencia exigible y la distribución de las cargas precontractuales de información entre las partes, Díez-Picazo expresa que:

> …cada parte debe informarse de las circunstancias y condiciones que son esenciales o relevantes para ella, desde luego en los casos en que tal información le es fácilmente accesible. La diligencia se aprecia, además, teniendo en cuenta las condiciones de las personas. Es exigible mayor diligencia cuando se trata de un profesional o de un experto. La diligencia exigible es, por el contrario, menor, cuando se trata de persona inexperta que entre en negociaciones con un experto. Díez-Picazo, *op. cit.*, pág. 216.

Por tanto, cada parte contratante tiene el deber de informarse. No obstante, esto no limita el análisis de los tribunales sobre la diligencia y conducta de la otra parte contratante.

IV

En el caso de autos, el acusado proveyó una identidad falsa a las autoridades y actuó en todo momento bajo tal identidad, incluso durante el periodo en el que estuvo bajo la custodia del Estado. El Estado utilizó los mecanismos acostumbrados y requeridos para corroborar la información y no advirtió la falsedad. Posteriormente, International, compañía experta en este tipo de transacciones, prestó una fianza por la cantidad de cien mil (100,000) dólares en efectivo como garantía de la comparecencia del acusado tras haber confiado en la identidad provista por el Estado. Por tal motivo, se le transfirió a la fiadora su custodia.

No tenemos duda de que el engaño cometido por el individuo lesiona tanto los intereses del Estado, que quedó

imposibilitado de procesarlo criminalmente, como los intereses económicos de la compañía fiadora. No obstante, considerando el conflicto de intereses existente entre ambas partes y conforme a la jurisprudencia y la doctrina antes descritas, debemos examinar si el error que aduce la fiadora fue uno esencial; cuál es la diligencia debida por la fiadora, y si conlleva la excusabilidad de dicho error.

   A. *Error esencial*

El objeto del Contrato de Fianza suscrito por International era garantizar la presentación ante el tribunal del individuo que usurpó la identidad del señor Javier De Jesús Carrillo. Concluimos que en el caso de autos hubo error esencial respecto al objeto del contrato puesto que de la fiadora haber conocido que no estaba garantizando al verdadero señor De Jesús Carrillo, no hubiese celebrado el mismo. Esto porque los elementos a considerar para medir su riesgo se trastocaban totalmente al cambiar la identidad del sujeto cuya presencia garantizaba. No obstante, éste no es el único criterio para conceder la anulación del Contrato de Fianza. El error, además de ser esencial, debe ser excusable.

   B. *Error excusable*

Para que un error en la formación de un contrato sea excusable, la parte contratante que aduce el error tiene el deber de informarse de forma diligente. Como discutiéramos anteriormente, tal deber recae sobre ambas partes.

De los hechos del caso surge que el Estado realizó la investigación correspondiente al proceso criminal en contra del fiado. Lamentablemente, a pesar de su gestión, no pudo descubrir la falsedad de la información suministrada por el acusado. Sin embargo, aunque el Estado no logró percatarse de que el acusado había falsificado su identidad, su actuación reflejó la diligencia debida. En lo concerniente a la evaluación e investigación llevadas a cabo por OSAJ, dicha Oficina utiliza unos sistemas de información para verificar la información provista por el individuo. A tenor con el Reglamento sobre Procedimientos Uniformes para la Evaluación, Recomendación de Libertad Provisional, Supervisión y Seguimiento de Imputados de Delito bajo la Jurisdicción de la Oficina de Servicios con Antelación al Juicio, *supra*, es ya cuando el tribunal decreta la libertad provisional del individuo **bajo la jurisdicción de OSAJ** que ésta corrobora –por medio de mecanismos adicionales e inclusive mediante investigaciones de campo– la información proporcionada, así como las recomendaciones y otros documentos posteriormente solicitados con el propósito de verificar datos personales y así determinar los niveles de supervisión requeridos para cada individuo.

Por otro lado, de los hechos y admisiones de International surge que la fiadora simplemente descansó en la información provista por el Estado, particularmente en la denuncia, sin realizar una investigación independiente de la información suministrada – esencial para el contrato

– que satisficiera sus necesidades como negocio.[4] Así las cosas, asumió la custodia y el riesgo por la incomparecencia del acusado por la suma de cien mil (100,000) dólares. La confianza que pudiera suscitarle la denuncia, documento que puede ser enmendado por defectos de forma como defectos sustanciales, no le exime de la diligencia que le es exigible como perita. Reglas 38(a) y 38(b) de Procedimiento Criminal, *supra*.

Asimismo, International se desentendió del imputado hasta que el Tribunal de Primera Instancia le notificó una orden para mostrar causa ante la incomparecencia del individuo al juicio en su fondo, fecha en que la fiadora admite que comenzó su investigación para dar con su paradero y por la que se enteró de que la identidad suministrada por éste era falsa. Ante este cuadro somos de opinión que la gestión mínima que podía realizar la compañía fiadora era verificar la dirección provista por el acusado dada la inexistencia de una identificación que contara con una dirección física en Puerto Rico.

Todos los argumentos presentados por la fiadora imponen sobre el Estado el peso de la corroboración de la identidad del acusado. Erróneamente, ésta arguye que en un

---

[4] Como parte de la información a la que tuvo acceso la fiadora antes de tomar su decisión de afianzar al acusado, pudo inspeccionar dos (2) tarjetas de identificación aparentemente emitidas por estados de los Estados Unidos con distintas direcciones, así como una tercera dirección en Puerto Rico **ofrecida verbalmente por el acusado.** Podemos razonablemente inferir que fue por esta misma falta de nexos con la comunidad, evidenciada por documentos de otros estados, que OSAJ no le ofreció a éste otros de sus servicios. **Además, según el Reglamento Núm. 5991,** *supra,* **al individuo no estar bajo la jurisdicción de OSAJ, la identificación llevada a cabo por este organismo se limitaba a los sistemas de investigación (SIJC), (NCIC), (VADIS/DAVID),(OAT) y otros sistemas de información análogos.**

contrato de fianza el Estado asume la responsabilidad contractual de identificar al imputado, sin necesidad de ésta verificarla, mientras que ella solamente se obliga a fiar y garantizar la comparecencia del fiado. Toma, por tanto, el riesgo de la incomparecencia a base de dicha información. Esto porque no es parte de la pericia requerida a este tipo de compañías la identificación de a quien fía tales sumas.  No podemos avalar tales argumentos.

Precisamente, si la obligación de la fiadora consiste en fiar y garantizar la comparecencia del fiado, entonces para cumplir satisfactoriamente con esa obligación, consustancialmente, debe procurar, cuando menos, constatar la información del fiado. Para ello basta con llevar a cabo aquella gestión razonable que le permita corroborar que el fiado es quién dice ser. Los argumentos de la fiadora, no sólo desconocen las distintas relaciones jurídicas existentes de un contrato de fianza, sino que ignoran el deber de informarse que tienen las partes contratantes y escudan la falta de diligencia de la fiadora tras la supuesta crasa falta de diligencia de la otra parte contratante.

Asimismo, cabe apuntar que a una compañía fiadora se le exige mayor diligencia por su condición de experta en la materia objeto de contrato que a una persona sin conocimiento de la misma.  Como expresáramos en *Pueblo v. Martínez Hernández*, *supra*, pág. 400, esc. 10, las compañías fiadoras "[p]reviendo la eventualidad de tener que pagar en

caso de incomparecencia del fiado, […] le exigen [al fiado] el pago de primas y el otorgamiento de garantías colaterales para cubrir el monto de la fianza, de manera que su riesgo quede asegurado". Por tanto, no es un negocio que se realice sin las debidas salvaguardas y menos ante una suma tan considerable.

Por tanto, no es suficientemente diligente una fiadora que descarga su responsabilidad de revisar datos esenciales para la formación del contrato de fianza en el Estado. Sostener lo contrario, le impondría la responsabilidad absoluta al Estado (es decir, a una de las partes contratantes) de asegurarse que la información sobre el potencial fiado sea correcta. Tal proceder podría tener efectos nocivos en los contratos de fianza criminal. Por eso, aunque el elemento bajo el que recayó el error era uno esencial –determinante para la celebración del negocio – éste no es un error excusable debido a la falta de diligencia exigible a una corporación que se dedica lucrativamente a ese negocio.

De forma alguna deseamos que se interprete que todo el peso sobre la identidad del fiador recae en la fiadora simplemente porque ésta deriva lucro de dicho negocio. Somos conscientes de que una fiadora diligente puede no percatarse de este tipo de error como le sucedió al Estado. No obstante, la fiadora deberá demostrar actuaciones diligentes que sean, a su vez, evaluadas al tenor con los

hechos de cada caso.   Éstas no están presentes en el caso de autos.

                                    V

    De conformidad con lo anterior, reconsideramos nuestra determinación en *Pueblo v. De Jesús Carrillo*; *International Fidelity Insurance Company*, *supra*, y confirmamos la decisión del Tribunal de Apelaciones.

    Se dictará sentencia de conformidad.


                              Mildred G. Pabón Charneco
                                   Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Recurrido

          v.

Javier De Jesús Carrillo

     Acusado

International Fidelity
Insurance Company

   Fiadora-Peticionaria

*Certiorari*

CC-2008-486

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

**SENTENCIA**
**(En reconsideración)**

San Juan, Puerto Rico, a 14 de junio de 2010.

De conformidad con la Opinión que antecede, reconsideramos nuestra determinación en *Pueblo v. De Jesús Carrillo; International Fidelity Insurance Company*, *supra*, y confirmamos la decisión del Tribunal de Apelaciones.

Lo acordó el Tribuna y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton disiente con opinión escrita a la cual se unen la Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico
    Recurrido

v.

Javier De Jesús Carrillo            CC-2008-486  *Certiorari*
    Acusado

International Fidelity
Insurance Company

    Fiadora-Peticionaria


Opinión Disidente emitida por el Juez Presidente señor Hernández Denton a la cual se unen las Juezas Asociadas señoras Fiol Matta y Rodríguez Rodríguez.


San Juan, Puerto Rico, a 14 de junio de 2010.

Disentimos de la Opinión que emite hoy el Tribunal en reconsideración, por entender que la Sentencia dictada originalmente en el caso de epígrafe, Pueblo v. De Jesús Carrillo, res. el 30 de diciembre de 2009, 2009 T.S.P.R. 189, es correcta en derecho y es la solución adecuada para los hechos particulares de este caso. Al dejar sin efecto este reciente pronunciamiento, el Tribunal pasa por alto las circunstancias excepcionales del caso de autos y pauta una norma generalizada que no se ajusta a éstas ni a la doctrina aplicable.

Asimismo, el proceder del Tribunal no halla base en la moción de reconsideración presentada por la Procuradora General, pues en ésta no se esbozan

argumentos que no hayan sido considerados ya por este Tribunal al emitir la Sentencia del pasado 30 de diciembre de 2009. La referida moción se limita meramente a reproducir partes de la Opinión Disidente emitida entonces por la compañera Jueza Asociada señora Pabón Charneco, y suscrita por los compañeros Jueces Asociados señores Martínez Torres y Kolthoff Caraballo. Es esta misma Opinión Disidente, que hace pocos meses no contó con el aval de una mayoría de los miembros de este Tribunal, la que ahora se reproduce en su totalidad como Opinión de Tribunal, con exactamente los mismos fundamentos jurídicos y el mismo análisis. Este proceder socava la confianza del pueblo en el sistema judicial y lesiona la legitimidad de las decisiones de este Tribunal en la medida en que éstas pueden cambiar de un momento a otro, sin que se hayan provisto fundamentos reales y sustantivos para ello. Por lo tanto, y porque somos del criterio que la Sentencia emitida anteriormente en este caso es correcta en derecho, disentimos.

I.

En la Sentencia que emitiera este Tribunal el pasado 30 de diciembre de 2009 se determinó que procedía dejar sin efecto la confiscación de una fianza prestada por la compañía International Fidelity Insurance Company (International) para garantizar la comparecencia de un acusado al tribunal durante el procedimiento criminal que se llevaba a cabo en su contra. Ello, pues determinamos que el fraude de identidad perpetrado por dicho acusado constituyó un error sustancial en cuanto al

objeto del contrato que vició el consentimiento de la fiadora al momento de prestar la fianza.

Específicamente, luego de analizar la doctrina aplicable, concluimos que el error en el objeto del contrato de fianza, además de esencial, había sido excusable, toda vez que la fiadora había descansado razonablemente en la identificación del acusado realizada por el Estado, quien lo había tenido bajo su custodia durante **tres meses** luego de que varias entidades gubernamentales de ley y orden intervinieran con él y le tomaran su información personal. Por ello, determinamos que, ante las circunstancias particulares del caso, procedía dejar sin efecto la confiscación de la fianza, pues el contrato de fianza entre International y el Estado fue inválido.

Inconforme con la determinación del Tribunal, algunos compañeros Jueces Asociados suscribieron una Opinión Disidente en la cual expusieron que, a pesar de coincidir con la Sentencia en cuanto a que el error en la identidad del acusado es uno esencial sobre el objeto del contrato, éste no fue excusable. Por lo tanto, fue su criterio entonces que International no había sido diligente al prestar la fianza, toda vez que no era razonable descansar en la información provista por el Estado para identificar al acusado. Sostuvo, en cambio, que la fiadora debió realizar determinadas gestiones dirigidas a asegurarse que el acusado era quien decía ser.

Una vez certificado el dictamen de este Tribunal, el Estado, a través de la Procuradora General, presentó

oportunamente una moción de reconsideración en la que nos solicitó que dejáramos sin efecto la Sentencia dictada el pasado 30 de diciembre de 2009. Como fundamento para ello sostuvo —al igual que lo hizo desde el inicio del caso— que la fiadora no había sido diligente al no realizar una corroboración independiente de la información provista por el Estado, por lo que procedía la confiscación de la fianza. Para sustentar su postura, se limitó a citar extensamente la Opinión Disidente emitida junto con la Sentencia del Tribunal. Aún así, una mayoría de los miembros de este Tribunal decide reconsiderar nuestra decisión anterior.

II.

Con el mayor de los respetos a los compañeros Jueces Asociados que suscriben la posición mayoritaria, en la Opinión emitida en el día de hoy no se exponen las razones que llevan al cambio de postura de este Tribunal, sino que meramente se indica que se reconsidera la decisión anterior a base de los fundamentos expuestos en la moción de reconsideración del Estado. Según mencionáramos, dicha moción sólo reproduce los argumentos ya presentados durante la etapa de consideración original del caso y adopta los pronunciamientos de la Opinión Disidente de la compañera Jueza Asociada señora Pabón Charneco. Es decir, los fundamentos que la mayoría de este Tribunal aduce para cambiar de parecer son los mismos que fueron considerados anteriormente.

Es norma conocida que los tribunales tenemos el poder inherente de reconsiderar nuestras determinaciones y

enmendarlas sustancialmente, a solicitud de parte o *motu proprio*, mientras tengamos jurisdicción sobre el caso. Insular Highway v. A.I.I. Co., res. el 9 de septiembre de 2008, 2008 T.S.P.R. 153. Precisamente, la moción de reconsideración es el mecanismo que provee nuestro ordenamiento para permitir que un tribunal modifique sus decisiones y enmiende o corrija los errores en que hubiese incurrido. Interior Developers v. Mun. de San Juan, res. el 28 de diciembre de 2009, 2009 T.S.P.R. 191; Lagares v. E.L.A., 144 D.P.R. 601, 609 (1997).

Las reconsideraciones también pueden ocurrir como parte del flujo normal de los procedimientos judiciales cuando existen otras circunstancias que pudieran justificar un giro en la decisión del Tribunal, como lo sería, por ejemplo, un cambio en la composición de esta Curia o de los jueces que intervienen en la consideración de los casos. Así, pues, en ocasiones ha ocurrido que algunos jueces se retiran o llegan nuevos miembros a este Foro en la etapa de reconsideración de un caso. Con el insumo de los nuevos jueces, o con la ausencia de alguno que estuvo previamente, la mayoría de votos necesarios para emitir una decisión puede cambiar, por lo que es entendible que se reconsidere y se dejen sin efecto pronunciamientos anteriores. Véanse, por ejemplo, Mun. Arecibo v. Mun. Quebradillas, 161 D.P.R. 109 (2004), reconsiderado en Mun. Arecibo v. Mun. Quebradillas, 163 D.P.R. 308 (2004);[5] Pueblo v. Pagán Medina, res. el 9 de

---

[5] Al momento de emitir la decisión original en esa ocasión, el Tribunal estaba compuesto por la Jueza Presidenta señora Naveira Merly y los Jueces Asociados señores Rebollo

febrero de 2010, 2010 T.S.P.R. 16, reconsiderado en <u>Pueblo v. Pagán Medina</u>, res. el 18 de febrero de 2009, 2009 T.S.P.R. 31.[6]

No obstante, los tribunales no debemos tomar livianamente esta facultad de reconsiderar nuestras decisiones, sobre todo cuando se trata de un tribunal de última instancia que tiene la responsabilidad constitucional de pautar derecho. Precisamente por la naturaleza de este Tribunal es que no debemos hacer uso continuo de un "retroscopio" que nos lleve a cambiar de opinión constantemente. Debemos hacerlo sólo cuando tengamos verdaderas razones de índole jurídico para ello y quedemos plenamente convencidos de que nuestro dictamen original fue equivocado. De lo contrario, corremos el peligro de restar certeza y confiabilidad a nuestras decisiones. Cambiar de parecer ante una moción de reconsideración que no expone argumento alguno que no haya sido evaluado y rechazado al emitir la ponencia original podría dar la impresión de que la Sentencia emitida previamente no fue el producto de un ejercicio de cuidadosa

---

López, Hernández Denton, Fuster Berlingeri, Corrada del Río y Rivera Pérez. Sin embargo, en el proceso de reconsideración, la Jueza Presidenta Naveira Merly se acogió al retiro y tomaron posesión de sus cargos las Juezas Asociadas señoras Fiol Matta y Rodríguez Rodríguez.

[6] De igual forma, cuando se emitió inicialmente la decisión de <u>Pagán Medina</u>, el Tribunal estaba compuesto por el Juez Presidente señor Hernández Denton, el Juez Asociado señor Rivera Pérez y las Juezas Asociadas señoras Fiol Matta y Rodríguez Rodríguez. Posteriormente, en el proceso de reconsideración juraron a sus cargos los nuevos Jueces Asociados señor Martínez Torres, señora Pabón Charneco y señor Kolthoff Caraballo.

deliberación y estudio por parte de todos los integrantes de esta Curia, máxime cuando intervinieron exactamente los mismos siete jueces en ambas decisiones.

Según nuestra experiencia en este Tribunal, todos los que intervenimos en los casos ante nuestra consideración los estudiamos detenidamente. Ello implica que, al emitir un voto, lo hacemos luego de haber sopesado los argumentos y fundamentos de todas las partes. Asimismo, y en atención al carácter colegiado de este Foro, consideramos detenidamente las opiniones de los demás miembros de este Tribunal. Sólo así nos aseguramos de que, al emitir nuestro voto, lo hacemos con el convencimiento de que la postura que asumimos es la que entendemos correcta a la luz del derecho aplicable y nuestro sentido de justicia. En lo que a nosotros respecta, en el caso de autos ya habíamos examinado la Opinión Disidente de la compañera Jueza Asociada señora Pabón Charneco previo a que se emitiera la Sentencia del pasado 30 de diciembre de 2009. En aquel entonces no la suscribimos por entender que la Sentencia emitida reflejaba la manera correcta de resolver la controversia.

Es importante señalar, además, que el caso se resolvió mediante Sentencia, la cual, como se sabe, no tiene efecto de precedente y su resultado sólo aplicaba al caso de autos. Consideramos que esta es la solución adecuada para un caso cuyas circunstancias son realmente excepcionales y no requieren que pautemos una norma generalizada.

Lo expuesto por la Procuradora General en su moción de reconsideración es exactamente el mismo argumento planteado

en su alegato ante nos, el cual fue considerado y descartado al emitir la Sentencia que hoy se reconsidera. Entendemos que la Procuradora General, lejos de proveer razones justificadas y fundamentos concretos por los cuales dejar sin efecto nuestra Sentencia anterior, se limita a reproducir los planteamientos de la Opinión Disidente emitida originalmente en el caso de autos.

Como Tribunal, proyectamos inseguridad en nuestras decisiones cuando emitimos una sentencia y luego cambiamos de parecer en la primera reconsideración sin que nos hayan provisto fundamentos nuevos o planteamientos meritorios que se pudieran haber perdido de vista al emitir la decisión original. Ciertamente, una moción de reconsideración bien fundamentada puede movernos a modificar nuestras posturas en aquellas circunstancias que realmente lo ameriten. Del mismo modo, es un proceso normal de un foro colegiado el que las posiciones minoritarias en algún momento lleguen a convertirse en mayoritarias. Sin embargo, ello debe ser el producto de fundamentos certeros y adecuados que respondan a un proceso de cuidadosa deliberación. No podemos perder de vista que, como tribunal de última instancia en nuestra jurisdicción, los dictámenes de esta Curia deben proveer a las partes, y a la ciudadanía en general, la seguridad de que al tomar una decisión lo hacemos luego de considerar cuidadosamente los asuntos y argumentos ante nuestra consideración, así como las posturas y opiniones de nuestros compañeros de Foro.

Nos preocupa, además, que ahora el Tribunal decida pautar una norma general mediante una Opinión, utilizando como base para ello un caso cuyas circunstancias son realmente excepcionales. Precisamente por la particularidad de los hechos del caso es que decidimos anteriormente que el mecanismo correcto para disponer de la presente controversia era una Sentencia. No olvidemos que, al resolver los casos, debemos también tener en mente las consecuencias de nuestras decisiones en el ordenamiento jurídico, y debemos ser cuidadosos de pautar derecho sólo cuando sea necesario.

Entendemos que la Sentencia emitida el pasado 30 de diciembre en el caso de epígrafe fue correcta en derecho y fue la solución adecuada dadas las características particulares del caso ante nuestra consideración. Las circunstancias excepcionales del fraude cometido por el acusado y el hecho de que estuviera en custodia del Estado durante tres meses sin que se pudiera detectar la falsedad de su identidad nos llevaron a concluir que el consentimiento de la fiadora estuvo viciado al prestar la fianza. Por lo tanto, estimamos entonces que no procedía la confiscación de la fianza. Nuestro criterio permanece inalterado.

III.

En vista de todo lo anterior, reiteramos nuestra conformidad con la Sentencia emitida anteriormente, así como con sus fundamentos. Ante el proceder del Tribunal de

dejarla   sin   efecto   injustificadamente,   respetuosamente disentimos.


                                        Federico Hernández Denton
                                             Juez Presidente