Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XII

| | | |
|---|---|---|
| ASOCIACIÓN DE MAESTROS DE PUERTO RICO y ASOCIACIÓN DE MAESTROS DE PUERTO RICOLOCAL SINDICAL por sí y en representación de sus miembros; JENIFFER MORENO CÓRDOVA, Maestra de la Escuela José Pagán de Jesús de Vega Alta; DENNIS JOSÉ PÉREZ MOLINA, Maestro de la Escuela Salomón Rondón de Guaynabo; ISAIRA RODRÍGUEZ ANDUJAR, Maestra de la Escuela Trina de Padilla de Arecibo; GLADYS MOLINA BONET, Maestra de la Escuela José Pagán de Jesús de Vega Alta; Maestra de la Escuela Trina de Padilla de Arecibo; NOEMÍ VALENTÍN SOTOMAYOR, Maestra de la Escuela Luis A. Ferrer Aguayo, Segunda Unidad Sabana Hoyos; RAMIRO QUIÑONES RODRÍGUEZ, Maestro de la Escuela Elemental Miguel González Bauzá de Peñuelas y otros<br><br>Apelante<br><br><br>*v.*<br><br><br><br>DEPARTAMENTO DE EDUCACIÓN HON. YANIRA RAÍCES VEGA, en su carácter oficial como Secretaria del Departamento de Educación; ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>Apelada | TA2025AP00556 | Apelación procedente del Tribunal de Primera Instancia Sala de San Juan<br><br>Civil Núm. SJ2024CV09086<br><br>Sobre: Sentencia Declaratoria; Derecho Constitucional al Debido Proceso de Ley; Igual Protección de las Leyes; Igual Paga por Igual Trabajo; Menoscabo de las Obligaciones Contractuales |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Adames Soto, Juez Ponente

**<u>SENTENCIA</u>**

En San Juan, Puerto Rico, a 27 de febrero de 2026.

Comparece la Asociación de Maestros de Puerto Rico (Asociación o la apelante), a través de recurso de *apelación*, solicitando que revoquemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de San Juan (TPI), el 1 de octubre de 2025. Mediante dicho dictamen, el foro apelado desestimó la *Demanda* que presentó la Asociación contra el Departamento de Educación (DE o apelado), razonando que carecía de jurisdicción para atenderla, pues las leyes aplicables concedían a la Comisión Apelativa del Servicio Público (CASP) jurisdicción primaria exclusiva sobre la materia.

Contrario a ello, la Asociación aduce que el TPI incidió al concluir que carecía de jurisdicción sobre varios de los planteamientos contenidos en la *Demanda de Sentencia Declaratoria*.

No nos persuade, decidimos *confirmar*.

**Resumen del tracto procesal pertinente**

El 30 de septiembre de 2024, seis miembros de la Asociación presentaron la referida *Demanda de Sentencia Declaratoria*. En esta alegó que el Departamento había incumplido con el mandato de la Ley Núm. 9-2022, *infra*, al no emitir las determinaciones de ajuste de posición bajo la Ley de la Carreras Magisterial, *infra*. Sostuvo que dicha negativa de parte del Departamento también constituía una violación al debido proceso de ley de los maestros demandantes.[1] Finalmente, adujo que, al amparo de sus reclamaciones, el TPI debía ordenar al Departamento a pagar los aumentos que legalmente les correspondían.

Pasados unos meses, el 12 de diciembre de 2024, la Asociación presentó una *Primera Demanda Enmendada de Sentencia Declaratoria*. Ello tuvo el propósito de enmendar la demanda a efectos de añadir a mil novecientos cincuenta y ocho (1,958) demandantes adicionales. Además, el 4 de abril de 2025, la Asociación presentó una *Segunda Demanda Enmendada de Sentencia Declaratoria*, sumando otros trescientos ocho (308)

---

[1] En la demanda inicial, la Asociación demandó en representación de seis de sus miembros.

maestros. En total, la parte demandante quedó compuesta por 2,266 maestros.

El 23 de abril de 2025, el DE presentó una *Moción de Desestimación*. En primer lugar, aseveró que la controversia se había tornado académica, por haberse emitido notificaciones en cuanto a los seis demandantes originales.[2] Además, afirmó que se estarían emitiendo las notificaciones que faltaban en las semanas siguientes. Con todo, razonó que no correspondía el remedio solicitado, pues la Ley 9-2022 *infra,* no operaba de forma automática, de modo que el Secretario del DE no estaba obligado a emitir las notificaciones según fueron solicitadas por la Asociación. Finalmente, adujo que el TPI carecía de jurisdicción para entender en el asunto, pues era la CASP quien gozaba de jurisdicción primaria exclusiva sobre la materia.

Luego, el 30 de mayo de 2025, la Asociación presentó su *Oposición a Moción de Desestimación.* Argumentó que la controversia no se había tornado académica debido a que, pese a que el DE había notificado acción a seis de los demandantes, aun habían más de 2,000 maestros que no habían recibido su debida notificación. Añadió que, dado a que sus alegaciones giraban en torno a los derechos constitucionales de los maestros y los deberes ministeriales del Departamento, no le correspondía al CASP atender tales reclamos, sino al TPI.

A partir de lo cual, las partes intercambiaron réplicas y dúplicas cuyo contenido giró esencialmente alrededor de asuntos que ya habían abordado.

Superados varios tramites procesales, el 1 de octubre de 2025, el TPI dictó la *Sentencia* cuya revocación solicita la Asociación, declarando Ha Lugar la *Moción de Desestimación* instada por el DE. Al así decidir el TPI concluyó que "los reclamos... corresponden a controversias laborales que caen dentro de la jurisdicción primaria exclusiva de la CASP".[3] Precisó que,

---

[2] Ver Entrada Núm. 21 de SUMAC. Ver también Anejo 1 de la Entrada Núm. 21 de SUMAC. Este último contiene cinco certificaciones emitidas a cinco maestros; dichas certificaciones fueron emitidas el 27 de marzo de 2025. El Anejo 2 de la Entrada Núm. 21 de SUMAC contiene una certificación a favor de una sola maestra, emitida el 11 de abril de 2025.

[3] Ver Entrada 46 de SUMAC, pág. 15.

el artículo 14 de la Ley Núm. 66-2014, dispone que la CASP es el foro con jurisdicción exclusiva sobre asuntos laborales que surjan de dicha ley, entre los cuales se encuentra los descritos en la Demanda. *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico*, 3 LPRA sec. 9120.[4] También citó como fundamento el artículo 11 del Plan de Reorganización Número 2-2010, *infra*.

Luego de que la Asociación presentara una *Moción de Solicitud de Reconsideración y Vista Argumentativa*, que resultó denegada, entonces acudió ante nosotros mediante recurso de apelación, señalando los siguientes de error:

> **PRIMER ERROR**: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA AUN CUANDO EL DEPARTAMENTO DE EDUCACIÓN HA NOTIFICADO SOLO ALGUNAS DECISIONES Y NO HA NOTIFICADO DECISIÓN DE CARRERA MAGISTERIAL A TODOS LOS APELANTES, POR LO QUE EN ESTE MOMENTO HAY APELANTES QUE CARECEN DE NOTIFICACIÓN ADECUADA CON ADVERTENCIA DE FORO Y TERMINO, A LA QUE TIENEN DERECHO.
>
> **SEGUNDO ERROR**: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA AUN CUANDO EL DEPARTAMENTO DE EDUCACIÓN HA NOTIFICADO A VARIOS APELANTES UNA DECISIÓN QUE LOS HACE ACREEDORES AL PAGO DE SALARIOS RETROACTIVOS AL 1 DE SEPTIEMBRE DE 2014 Y 2015, Y NO HA PAGADO LOS MISMOS.
>
> **TERCER ERRO**: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA POR FALTA DE AGOTAMIENTO DE REMEDIOS ADMINISTRATIVOS, CUANDO HAY MAESTROS APELANTES QUE NO HAN RECIBIDO UNA NOTIFICACIÓN ADECUADA SOBRE SU RECLAMO DE CARRERA MAGISTERIAL 2014 Y/O 2015, Y OTROS A QUIENES DEPARTAMENTO DE EDUCACIÓN LE RECONOCIO EL DERECHO SOBRE SU AUMENTO DE CARRERA MAGISTERIAL 2014 Y/O 2015 Y AUN NO LES HA PAGADO, POR LO QUE NO TIENEN FORO ADMINISTRATIVO ALGUNO AL QUE RECURRIR.

En respuesta, el DE presentó *Alegato en Oposición*.

---

[4] El artículo 14 dice, en parte:

> La Comisión Apelativa del Servicio Público (CASP), o la entidad sucesora de ésta, en lo que corresponde a asuntos de naturaleza laboral o que de otra forma ordinariamente caerían dentro de la jurisdicción de CASP, tendrá jurisdicción primaria exclusiva *para atender apelaciones surgidas como consecuencia de acciones o decisiones tomadas conforme a este Capítulo*, de aquellos empleados cubiertos o no cubiertos por las disposiciones de la Ley Núm. 45-1998, según enmendada, conocida como la Ley de Relaciones del Trabajo para el Servicio Público…. (Énfasis suplido).

Contando con los escritos de las partes, estamos en posición para resolver.

## I. Exposición de Derecho

### a. Jurisdicción de los tribunales

El término jurisdicción es "el poder o la autoridad de un tribunal para considerar y decidir casos y controversias". *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 267 (2018); *Yumac Home v. Empresas Massó*, 194 DPR 96, 103 (2015). Tanto los foros de instancia, como los foros apelativos, tienen el deber de analizar de forma prioritaria si poseen jurisdicción para atender las controversias presentadas ante su consideración. Esto puesto que los tribunales estamos llamados a ser fieles guardianes de nuestra jurisdicción, incluso cuando ninguna de las partes invoque tal defecto. *Ruiz Camilo v. Trafón Group, Inc.*, *supra*, pág. 268; *Shell Chemical v. Srio. Hacienda*, 187 DPR 109, 122-3 (2012).

Lo anterior responde a que las cuestiones jurisdiccionales son materia privilegiada y deben resolverse con preferencia a los demás asuntos. Incluso, nuestro Tribunal Supremo ha añadido que evaluar los aspectos jurisdiccionales es parte de nuestro deber ministerial y debe hacerse antes de que el tribunal pueda conocer del pleito. *Ruiz Camilo v. Trafón Group*, Inc., supra, pág. 268; *Mun. San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014). De aquí que, si determinamos que no tenemos jurisdicción sobre un recurso o sobre una controversia determinada, debemos así declararlo y proceder a desestimar, pues no tenemos discreción para asumir jurisdicción donde no la tenemos. *Mun. San Sebastián v. QMC, supra*, pág. 660; *Yumac Home v. Empresas Massó*, supra, pág. 103.

Con respecto a la jurisdicción sobre la materia, se sabe que ésta se refiere a la capacidad de un tribunal para atender un asunto legal. *Shell v. Srio. de Hacienda*, supra, 122 (2012). Cuando un tribunal carece de jurisdicción sobre la materia, su actuación u orden se considera nula. *López*

*García v. López García*, 200 DPR 50, 62 (2018). Por tanto, nuestro más alto foro ha dicho en cuanto a la falta de jurisdicción que:

> (1) [N]o es susceptible de ser subsanada; (2) las partes no pueden otorgar voluntariamente jurisdicción sobre la materia [a un tribunal] ni el tribunal abrogársela; (3) los dictámenes de un foro sin jurisdicción sobre la materia son nulos (nulidad absoluta); (4) los tribunales tienen el deber ineludible de auscultar su jurisdicción; (5) los tribunales apelativos, además, deben examinar la jurisdicción del foro de donde procede el recurso, y (6) el planteamiento de falta de jurisdicción sobre la materia puede hacerse en cualquier etapa de los procedimientos por cualquiera de las partes o por el tribunal *motu propio*. Shell v. Srio. de Hacienda, supra, pág. 122; Aguadilla Paint Center v. Esso, 183 DPR 901, 931 (2011).

**b. Jurisdicción estatutaria o primaria exclusiva**

Entre las doctrinas de abstención judicial se encuentra la doctrina de jurisdicción primaria. La misma atiende el problema de determinar si el foro con jurisdicción para ventilar una controversia en primera instancia es el tribunal o la agencia administrativa, lo cual establece un sistema de prelación o prioridad jurisdiccional. *MCS Advantage Inc. v. Fossas Blanco*, 211 DPR 135, 146 (2023). La doctrina de jurisdicción primaria tiene dos modalidades: por una parte, la jurisdicción primaria concurrente y, por otra, la jurisdicción primaria exclusiva. *Rivera Ortiz v. Mun. de Guaynabo*, 141 DPR 257, 267 (1996) (citas omitidas).

La jurisdicción primaria exclusiva, también conocida como jurisdicción estatuaria[5], se refiere a cuando una ley o un estatuto le confiere jurisdicción a determinado ente administrativo y establece que este sea el único foro con facultad para resolver, inicialmente, una controversia. Es decir, si una agencia cuenta con la jurisdicción primaria exclusiva, "los tribunales no tendrán autoridad para dilucidar el caso en primera instancia". *SLG Semidey Vázquez v. ASIFAL*, 177 DPR 657, 677 (2009); *Municipio Arecibo v. Municipio Quebradillas*, 163 DPR 308, 327 (2004). Se ha enfatizado que "[p]ara determinar si la ley le confiere o no jurisdicción exclusiva a un organismo administrativo... aun cuando la designación de jurisdicción

---

[5] *Rivera Ortiz v. Mun. de Guaynabo*, 141 DPR 257, 267-8.

exclusiva debe ser clara y precisa, el legislador no siempre [tiene que] utiliza[r] el término *exclusiva*". Báez Rodríguez v. E.L.A., 179 DPR 231, 241 (2010). En conformidad con lo anterior, "[p]ara privar a un tribunal de jurisdicción general de su autoridad para entender en algún asunto en particular, es necesario que así se haya dispuesto expresamente en algún estatuto o que ello surja del mismo por implicación necesaria". *Junta Dir. Cond. Montebello v. Fernández*, 136 DPR 223, 230 (1994).

A pesar de lo anterior, "la jurisdicción primaria exclusiva no soslaya la revisión judicial posterior de la decisión del organismo". *Beltrán Cintrón v. ELA*, 204 DPR 89, 104 (2020). Es decir, una determinación administrativa puede ser objeto de revisión judicial posterior al proceso adjudicativo de la agencia. De este modo, si el caso llegara luego al tribunal, "éste tendrá el beneficio del parecer del ente administrativo especializado sobre la controversia". *Municipio Arecibo v. Municipio Quebradillas*, 161 DPR 109, 134 (2004).

### c. **Jurisdicción primaria concurrente**

La jurisdicción primaria concurrente presupone que tanto el tribunal como el foro administrativo tienen jurisdicción. *CBS Outdoor v. Billboard One*, Inc., 179 DPR 391, 403-4 (2010); *SLG Semidey Vázquez v. ASIFAL*, supra, pág. 676. En palabras de nuestro Tribunal Supremo, "[l]a verdadera jurisdicción primaria ocurre tan solo cuando existe jurisdicción concurrente entre el proceso administrativo y el sistema judicial". *Ferrer Rodríguez v. Figueroa*, 109 DPR 398, 402 (1980); *SLG Semidey Vázquez v. ASIFAL*, supra, pág. 676. En estas situaciones, los tribunales suelen brindar deferencia al foro administrativo para atender la controversia. Esto porque los foros administrativos están "mejor equipad[o]s que los tribunales debido a su especialización y al conocimiento obtenido a través de la experiencia". *Ortiz v. Panel F.E.I.*, 155 DPR 219, 243 (2001).

Por lo tanto, como regla general, se debe aplicar esta norma de abstención, "en casos en los cuales el peritaje de la agencia sea indispensable

para resolver la controversia, ya que los tribunales [son] de justicia y no centros académicos para dirimir sutilezas técnicas". *Ortiz v. Panel F.E.I.,* supra a la pág. 244 (citando a *Quiñones v. A.C.A.A.,* 102 DPR 746, 749-50 (1974). Ahora bien, si las controversias presentadas "no requieren el peritaje o el conocimiento especializado de la agencia, el foro judicial no tiene por qué abstenerse de ejercer su autoridad ordinaria para atender el asunto ante su consideración". *Báez Rodríguez v. E.L.A.,* supra, pág. 240.

Una excepción establecida de la regla anterior es cuando se plantea una violación a derechos constitucionales. *Beltrán Cintrón v. ELA,* supra, pág. 104; *Santiago v. Superintendente de la Policía,* 112 DPR 205, 207 (1982). No obstante, no basta con meramente alegar que se está ante una violación de derechos constitucionales, sino que se tiene que demostrar, además, que "la acción administrativa constituye una gestión inútil, inefectiva y que no ofrece un remedio adecuado o que ha de causar un daño irreparable e inminente". *First Fed. Savs. v. Asoc. de Condómines,* 114 DPR 426, 439 (1983).

El ejercicio de jurisdicción primaria de parte de una agencia no afecta el derecho de las partes de acudir a los foros judiciales, una vez culminado el proceso ante el foro administrativo. *Ferrer Rodríguez v. Figueroa,* supra, pág. 402 ("la verdadera jurisdicción primaria únicamente suspende o dilata la intervención judicial"). Ver también *U.S. v. Philadelphia Nat. Bank,* 374 U.S. 321, 353 (1956).[6] Igual opera en casos donde la agencia tiene jurisdicción estatutaria. *Beltrán Cintrón v. ELA,* supra, pág. 104.

El desarrollo doctrinal de los Estados Unidos nos permite entender el valor de esta norma y sus posibles ventajas. Hickman and Pierce, *Administrative Law Treatise,* 7ma ed., Wolters Kluwer, 2025, Vol. 2, secciones 16.1 y 16.3. Hacemos referencia a este con propósito persuasivo. Según estos tratadistas, esta norma sirve para asignar el poder decisorio a

---

[6] "[Where primary jurisdiction is applicable, c]ourt jurisdiction is not thereby ousted, but only postponed."

la agencia en casos donde hay un solape entre la autoridad de la agencia y de los tribunales. *Id.*, sec. 16.1.[7] Al momento de determinar que curso de acción es idóneo, los tribunales suelen evaluar: (1) si la pericia de la agencia la convierte en un foro preferido para resolver la controversia, (2) la necesidad de resoluciones uniformes en el área y (3) el potencial de que una resolución adversa de parte del tribunal pueda impedir la capacidad de la agencia de cumplir con sus responsabilidades. *Id.*, en la pág. 1661.

La doctrina de jurisdicción primaria tiene diversas ventajas, tales como: (1) permite que una controversia sea atendida por el foro predilecto por la legislatura, (2) da la oportunidad a que una agencia con pericia sobre la materia resuelva la controversia en primera instancia, (3) promueve la uniformidad con respecto a la aplicación de las leyes, entre otras. Richard J. Pierce Jr., *Primary Jurisdiction: Another Victim of Reality*, 69 Administrative Law Review 431, 436 (2017). Ver también Nicholas A. Luccheti, *One Hundred Years of the Doctrine of Primary Jurisdiction: But what standard of review is appropriate for it*, 59 Administrative Law Review 849, 854-5 (2007).[8]

En su obra de Derecho Administrativo, Hickman y Pierce reseñan instancias donde el Tribunal Supremo de los Estados Unidos ha permitido que los casos se ventilen primero ante la agencia previo a ejercer su jurisdicción. Hickam & Pierce, *op. cit.*, págs. 1692-4. Allí, por ejemplo, reseñan el tracto en los casos de *Far East Conference v. U.S.*, 342 U.S. 570 (1952) y *Federal Maritime Board v. Isbrandtsen Co., Inc.*, 356 U.S. 481 (1958). Inicialmente, en *Far East*, el Supremo había rechazado ejercer su jurisdicción, razonando que la agencia tenía jurisdicción primaria.[9] Luego de

---

[7] Esta definición también se encuentra en el lenguaje de algunos casos del Tribunal Supremo de los Estados Unidos. Por ejemplo, ver *U.S. v. Western Pacific Railroad Co.*, 352 U.S. 59, 65 (1956), donde dice: "The doctrine of primary jurisdiction thus does more than prescribe the mere procedural timetable of the lawsuit. It is a doctrine allocating the law-making power over certain aspects of commercial relations. It transfers from court to agency the power to determine some of the incidents of such relations."

[8] Dice allí el autor: "There are two objectives of primary jurisdiction: uniformity and expertise."

[9] La agencia en cuestión en estos casos era la *Federal Maritime Board* (FMB).

que la agencia realizara su interpretación y promulgara su determinación, el Supremo les revocó en *Isbrandtsen*. Comentan Hickman & Pierce que:

> *Far East Conference* e *Isbrandtsen* son enteramente consistentes y proveen una excelente ilustración del valor potencial de la doctrina de jurisdicción primaria. Al referir la controversia a la agencia con conocimiento especializado de, y autoridad sobre, la practicas de la industria marítima, la Corte pudo obtener conocimiento valioso de la agencia previo a resolver una controversia importante que afectaba la industria regulada. ... El análisis de una agencia de una materia sobre la cual tiene pericia puede reforzar las intuiciones iniciales de un tribunal, o pueden demostrar a la satisfacción los defectos de las intuiciones de los foros revisores. Hickman & Pierce, *op. cit.*, pág. 1694 (traducción suplida).

Este pasaje es ilustrativo de los valores que fundamentan la doctrina de jurisdicción primaria, la cual puede garantizar, incluso, un mejor ejercicio de la revisión judicial.

### d. Plan de Reorganización Núm. 2-2010, *Plan de Reorganización de la Comisión Apelativa del Servicio Público*

El Plan de Reorganización Núm. 2 de 26 de julio de 2010 (Plan de Reorganización 2-2010) fusionó la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público y la Comisión de Relaciones del Trabajo del Servicio Público y creó la CASP. *Plan de Reorganización de la Comisión Apelativa del Servicio Público*, 3A LPRA Ap. XIII. La CASP es un organismo cuasi-judicial "**especializado en asuntos obrero-patronales y del principio de mérito en el que se atenderán casos laborales, de administración de recursos humanos y de querellas**". Artículo 4 del Plan de Reorganización 2-2010, *supra*. (Énfasis provisto).

El artículo 8 de dicho estatuto establece las amplias facultades y funciones que tiene la CASP. Así, la CASP goza tanto de poderes investigativo, como autorización para conceder una multitud de remedios, en lo pertinente:

> **c)** realizar, a petición de parte o por iniciativa propia, **todas las audiencias, vistas públicas o privadas, reuniones, encuestas e investigaciones que, en opinión de la Comisión, sean necesarias y adecuadas para el ejercicio de las facultades que le confiere este Plan**. A tales fines, la Comisión o su representante tendrá acceso a cualquier evidencia de cualquier persona que esté siendo investigada o contra la cual se haya

procedido y que se refiera a cualquier asunto que esté investigando la Comisión o que esté en controversia;
**f) solicitar a las agencias, municipios, corporaciones públicas y otras instrumentalidades del Gobierno de Puerto Rico que suministren a la Comisión todos los expedientes, documentos e informes no privilegiados por ley que posean con relación a cualquier asunto en el que esté interviniendo la Comisión**;
**i) conceder los remedios que estime apropiados y emitir las órdenes que sean necesarias y convenientes conforme a las leyes aplicables**. Esto incluye, entre otras, órdenes provisionales o permanentes de cesar y desistir; órdenes para la reposición de empleados suspendidos o destituidos, con o sin el abono de la paga atrasada dejada de percibir y la concesión de todos los beneficios marginales a los cuales los empleados hubiesen tenido derecho durante el período de suspensión o destitución; órdenes imponiendo sanciones económicas o procesales a agencias, funcionarios o representantes legales por incumplimiento o dilación de los procedimientos; y órdenes imponiendo sanciones a agencias, organizaciones sindicales o representantes exclusivos, incluyendo la descertificación de estos últimos …. Artículo 8 del Plan de Reorganización 2-2010, *supra.* (Énfasis provisto).

Acto seguido, el Plan de Reorganización 2-2010, en los artículos 11 y 12, establece las instancias en las cuales la CASP tendrá jurisdicción primaria exclusiva sobre reclamaciones y sobre apelaciones, respectivamente. Quiere decir que, en los casos expresamente enumerados en los artículos 11 y 12, las personas querellantes tendrán que necesariamente acudir a la CASP, sin poder acudir a los tribunales hasta y en tanto la agencia haya atendido el caso. Esos artículos establecen, en lo pertinente:

**Artículo 11. — Jurisdicción Primaria de la Comisión.**
La Comisión tendrá jurisdicción primaria exclusiva sobre:
**a)** las reclamaciones surgidas como consecuencia de acciones o decisiones del patrono en violación a las disposiciones de la Ley Núm. 45 de 1998, según enmendada …

**Artículo 12. — Jurisdicción Apelativa de la Comisión.**

La Comisión tendrá jurisdicción exclusiva sobre las **apelaciones** surgidas como **consecuencia de acciones o decisiones de los Administradores Individuales** y los municipios en los casos y por las personas que se enumeran a continuación:
        …
**g)** cualquier asunto proveniente u originado de la administración de los recursos humanos **no cubierto en otras leyes o convenios colectivos**. Artículos 11 y 12 del Plan de Reorganización 2-2010, *supra.* (Énfasis provisto).[10]

---

[10] Se omiten los restantes incisos del artículo 12 por resultar inaplicables a la controversia del caso. Particularmente el inciso "a" hace referencia a *no cubiertos por la Ley 45-1998.* El

No es este el límite de la jurisdicción de la CASP, conforme a la norma reiterada que la jurisdicción surge de la totalidad de la ley habilitadora. *DACO v. AFSCME*, 185 DPR 1, 12 (2012). En instancias que no puedan ser categorizadas como una de las anteriores, el ejercicio de su jurisdicción no será en exclusión de la jurisdicción de los tribunales, siendo de aplicación la norma de jurisdicción primaria concurrente.

### e. Ley Núm. 9-2022, Ley de Ajuste Salarial para los Maestros y Maestras Conforme a la Ley de la Carrera Magisterial

El 7 de marzo de 2022, la Asamblea Legislativa aprobó la Ley Núm. 9-2022 con la expresa intención de aligerar los trámites y facilitar el cumplimiento de la Ley de Carrera Magisterial, la Ley Núm. 158-1999. Ley Núm. 9-2022, *Ley de Ajuste Salarial para los Maestros y Maestras Conforme a la Ley de la Carrera Magisterial*, 3 LPRA sec. 9117. Para lograr la encomienda, la ley establece una serie de pasos que tienen que tomar el DE, la Oficina de Gerencia y Presupuesto, entre otras agencias. En particular, dicta la ley:

> **Sección 5.**
> **Se le ordena al Departamento de Educación a que realice, en un periodo de 270 días desde la entrada en vigor de esta Ley [es decir, desde 7 de marzo de 2022], todo trámite, cálculo y análisis requerido para identificar y cualificar a los profesionales del Departamento de Educación a los cuales no se les completó el proceso de ajuste salarial bajo la Ley de Carrera Magisterial a pesar de reunir los requisitos de cualificación para el mismo**. Dicho trámite permitirá que aquellos profesionales del Departamento de Educación que hayan cumplido con su Plan de Mejoramiento Profesional de Carrera Magisterial al completar alguna etapa de un Nivel o culminado un Nivel, se le permita revisión y pago de salario retroactivo a los años que el Programa de Carrera Magisterial del Departamento de Educación no solicitó el Plan de Mejoramiento Profesional.
>
> **Sección 6.**
> **Se le ordena al Departamento de Educación** a identificar la cantidad de dinero adeudado correspondiente a los Años Fiscales 2014-2015, 2015-2016, 2016-2017, 2017-2018, 2018-2019, 2019-2020, 2020-2021 y 2021-2022 conforme a la aplicación de la Ley 158-1999, *supra*. Ley Núm. 9-2022, *supra*. (Énfasis provisto).

---

Sindicato vinculado a la Asociación se creó conforme a la Ley 45-1998, por lo cual no le aplica lo dispuesto en el citado artículo.

Como se desprende del texto citado, el DE tiene la obligación de completar todos los procedimientos necesarios para identificar a los maestros que hayan cumplido con el proceso de la Ley de Carrera Magisterial y pagarles el diferencial adeudado.

**II.  Aplicación del Derecho a los hechos**

Los señalamientos de error son susceptibles de discusión conjunta, así obraremos. La apelante afirma que el TPI incidió al desestimar la demanda, razonando que el DE no había notificado a muchos de los maestros consignados en la demanda, por lo cual estos no podían efectivamente ejercer su derecho de apelar la determinación. También asevera que el TPI se equivocó al desestimar el pleito en cuanto a los codemandantes que sí habían recibido notificación, pues estos tenían derecho a recibir el pago correspondiente. Finalmente, aduce que correspondía agotar los remedios administrativos. No nos persuade.

a.

Como cuestión de umbral, debe entenderse cuál fue el curso de acción del TPI. El foro primario desestimó la causa de acción presentada por juzgar que el organismo adjudicativo con jurisdicción estatutaria para atenderla lo es la CASP.

Ahora, si bien la contención de que la CASP goza de jurisdicción estatutaria requiere un análisis minucioso de las leyes aplicables, dicho ejercicio no es necesario en esta ocasión para resolver la controversia ante nuestra consideración. Este tribunal es del criterio que la CASP goza de jurisdicción primaria exclusiva sobre la materia, pero, en cualquier caso, existen razones de peso para deferir el ejercicio de la jurisdicción en primera instancia a esta.

Como señalamos al exponer el derecho pertinente, el Plan de Reorganización 2-2010 creó en la CASP una entidad especializada con amplias facultades y poderes. Esta entidad cuasi-judicial goza de poderes incluso para investigar a entes privados y públicos, y para conceder los

remedios que entienda meritorios al amparo de los propósitos que animaron su creación. Artículo 8 del Plan de Reorganización 2-2010, *supra*. A su vez, la propia legislación aludida le reconoce poderes para realizar vistas y solicitar la producción de documentación a las agencias a cuya revisión tiene a cargo. *Id*. Además, es la CASP la entidad con la pericia en materia de asuntos laborales y de recursos humanos. Artículo 4 del Plan de Reorganización 2-2010, *supra*.

Según los principios identificados tanto en la jurisprudencia puertorriqueña, como en las fuentes secundarias citadas, es propicio el ejercicio de abstención judicial cuando la pericia de la agencia la convierte en un foro idóneo para dilucidar la(s) controversia(s), y cuando se requiere uniformidad en la aplicación de un estatuto. También dicha autolimitación es aconsejable cuando al así hacerlo se posibilita recibir el insumo de la agencia especializada sobre la materia en controversia.

Estos principios nos guían a conceder deferencia a la agencia especializada en primera instancia. La jurisdicción de la CASP surge de su ley orgánica, el Plan de Reorganización 2-2010, *supra*. Esta ley, desde su declaración de política pública, asigna en la CASP la pericia para atender controversias obrero-patronales de empleados cobijados por la Ley Núm. 45-1998, como los son los maestros representados por la Asociación. Artículo 2 del Plan de Reorganización 2-2010, *supra*. En la justificación de la creación de este nuevo foro administrativo, el legislador citó con aprobación *Díaz Marín v. Mun. de San Juan*, donde el Supremo avaló la práctica de crear foros cuasi-judiciales que "**en primera instancia** recibe[n] la prueba y mediante conclusiones de hecho y derecho formula[n] sus decisiones". *Díaz Marín*, 117 DPR 334, 339 (1986). (Énfasis provisto). Es decir, la intención del legislador con la CASP fue precisamente crear una entidad que pudiese atender los diversos reclamos de los empleados del servicio público en primera instancia. Es en virtud de este fin, insistimos,

que el legislador le concedió amplias facultades a la CASP. *Artículo 8 del Plan de Reorganización 2, supra.*

Visto lo anterior, somos del criterio que la CASP tiene, además de la pericia y la autoridad legal, las facultades para dilucidar las reclamaciones de la Asociación. Recordemos que sus reclamaciones surgen de la Ley Núm. 9-2022, la cual busca hacer valer los derechos otorgados a los maestros en la Ley Núm. 158-1999. En síntesis, la Asociación solicita del TPI que declaren el derecho de los maestros a ser (1) notificados de la determinación del Departamento y (2) pagos de manera retroactiva y, en segundo lugar, que ordenen al Departamento a realizar la notificación y el pago.[11]

Por otra parte, el artículo 8 del mismo estatuto pauta que la CASP podrá "solicitar a las agencias ... **todos los expedientes, documentos e informes no privilegiados** ... que posean con relación a **cualquier asunto** en el que esté interviniendo [la CASP]". También indica que la CASP podrá "conceder los remedios que estime apropiados y emitir las órdenes que sean necesarias y convenientes conforme a las leyes aplicables". Adicional a lo anterior, el artículo 16 autoriza a la CASP a "**imponer a cualquier agencia** ... que desobedezca, evite, obstruya o impida la ejecución de alguna de sus citaciones u órdenes ... una multa no menor de quinientos (500) dólares, ni mayor de diez mil (10,000) dólares, por cada día en que incurriere en dicha violación ...".

Es decir, la CASP tiene autoridad para investigar al DE, verificar su cumplimiento con la Ley Núm. 9-2022, emitir cualquier orden que estime necesaria para asegurar tal cumplimiento y, de ser necesario, imponerle sanciones, de este desatender una de sus órdenes. Dentro de tan ancho margen de acción reconocido a la CASP concluimos que nada en la ley impide que esta ordene al DE a realizar las determinaciones correspondientes respecto a los planteamientos de los demandados-peticionarios, **y a emitir**

---

[11] Ver *Demanda*, Entrada Núm. 1 de SUMAC, pág. 17. La misma súplica se reitera en las demandas enmendadas, *véase* Entrada Núm. 15 de SUMAC y Entrada Núm. 19 de SUMAC.

**las respectivas notificaciones que les habiliten para solicitar el remedio que proceda**.

No pasa por inadvertido, además, que parte de las reclamaciones de la Asociación requerirían que el TPI entrara a evaluar si los maestros demandantes habían cumplido con la Ley Núm. 158-1999 y, de encontrar que sí, calcular la cuantía que se les pagaría. Esto claramente ubica dentro de las materias en que la CASP ha de mostrar su pericia, y, en cualquier caso, el TPI bien se vería beneficiado con la intervención inicial que sobre este asunto el primero hiciera.

En definitiva, concluimos que el TPI no incidió al desestimar la demanda, pues, en efecto, es en la CASP donde reside la jurisdicción primaria sobre la causa de acción presentada.

## III. Parte dispositiva

Por los fundamentos que anteceden, se confirma la Sentencia recurrida.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones